DREES COMPANY ET AL., APPELLANTS, *v.* HAMILTON TOWNSHIP ET AL.,
APPELLEES.

[Cite as *Drees Co. v. Hamilton Twp.,* 132 Ohio St.3d 186, 2012-Ohio-2370.]

*R.C. 504.04(A)(1)—Impact fees imposed by township upon applicants for zoning
certificates for new construction or redevelopment operated as taxes, so
township was not authorized to impose them.*

(No. 2010-1548—Submitted June 8, 2011—Decided May 31, 2012.)

APPEAL from the Court of Appeals for Warren County,

No. 2009-11-150, 2010-Ohio-3473.

_____

PFEIFER, J.

{¶ 1} In this case we consider whether Hamilton Township, a limited-home-rule township, was authorized under Ohio law to impose its system of impact fees upon applicants for zoning certificates for new construction or redevelopment within its unincorporated areas. We hold that the impact fees operated as taxes; thus, Hamilton Township was not authorized to impose them pursuant to R.C. 504.04(A)(1).

**Factual and Procedural Background**

{¶ 2} Appellee Hamilton Township is a township that has adopted a limited-home-rule government, as defined by R.C. Chapter 504, and is located in Warren County. It has seen significant growth in recent years; the population grew from 5,900 in 1990, to 9,630 in 2000, to 23,556 in 2010. http://www.census.gov/prod/cen1990/cp1/cp-1-37.pdf (page 583, accessed May 3, 2012); http://factfinder2.census.gov/faces/tableservices/jsf/pages/product view.xhtml?pid =DEC_10_DP_DPDP1&prodType=table (accessed May 3, 2012) and http://factfinder2.census.gov/faces/tableservices/jsf/pages/productview.xhtml

?pid= DEC_00_SF1_DP1&prodType=table (accessed May 3, 2012). Appellee Hamilton Township Board of Trustees is the legislative and administrative body responsible for governing Hamilton Township under R.C. Title 5.

{¶ 3} On May 2, 2007, the board of trustees passed Amended Resolution No. 2007-0418, descriptively titled "Amended Resolution Implementing Impact Fees Within the Unincorporated Areas of Hamilton Township, Ohio for Roads, Fire and Police, and Parks." The resolution adopted a schedule of fees to be charged to applicants for zoning certificates for new construction or redevelopment. The resolution included four categories of fees: a road-impact fee, a fire-protection-impact fee, a police-protection-impact fee, and a park-impact fee. The parties in this case made the following stipulation regarding the purpose of the resolution:

> The purpose of the impact fee is to benefit the property by providing the Township with adequate funds to provide the same level of service to that property that the Township currently affords previously developed properties.
>
> The Resolution assesses an impact fee to previously undeveloped property, and property undergoing redevelopment, to offset increased services and improvements needed because of the development.

{¶ 4} The amount of the fees varies based upon the land use. Owners of property to be used for single-family detached dwellings, multifamily units, and hotel/motel rooms are assessed fees on a per-unit basis. Owners of property to be used for retail/commercial, office/institutional, industrial, warehouse, church, school, nursing-home, and hospital purposes are assessed fees on a per-1,000-

2

square-feet basis. Only owners of property to be used for single-family detached and multifamily units are assessed the park component of the impact fees.

{¶ 5} For example, the fees for the owner of property to be used as a single-family detached dwelling, broken down by category, are $3,964 for roads, $335 for fire, $206 for police, and $1,648 for parks, for a total assessment of $6,153. The fees, per 1,000 square feet, for the owner of property to be used for retail/commercial purposes are $7,265 for roads, $432 for fire, and $265 for police, for a total assessment of $7,962. The township phased in the impact fees over time, charging only one-third of the total fee the first year after passage and two-thirds the second year. As of August 31, 2009, the township has charged the full impact fees.

{¶ 6} All impact fees collected by the township are deposited into impact-fee accounts, not into a general fund. The resolution created accounts for each of the four types of impact fees. Money in each discrete account may be used only for the purpose of the account. The accounts do not contain geographic subaccounts. The money in each account is to be spent on a "first-in/first-out" basis, meaning that the money that has been in each account the longest will be spent first. Funds must be spent on projects initiated within three years of the fees' collection; any money not spent within seven years of its collection is refunded to the current owner of the property.

{¶ 7} The resolution permits the township to give credits to offset against the impact fees for certain improvements. A land owner or developer can receive partial or full credit for contributions toward the cost of major roadway-system improvements, provided the roadway is on the township's thoroughfare plan. However, no credit will be given for dedication of right-of-ways or for improvements to the major roadway system that primarily serve traffic generated by the improved property, such as acceleration/deceleration lanes into and out of the property.

**{¶ 8}** The township allocates a maximum of 75 percent of the impact fees collected each year to reimburse developers for eligible improvement credits. If the amount allocated for reimbursements is not sufficient to make all payments due to developers for that year, each developer will receive a pro rata share of the amount owed, and the unpaid amount will be carried forward to the following year. If less than 75 percent of the impact fees collected is required for reimbursements in any given year, the remainder may be used for public-project expenditures.

**{¶ 9}** The township will not issue a zoning certificate until the applicant has paid the applicable impact fee. Within the first year of the passage of the resolution, appellants the Drees Company, Fischer Single Family Homes II, L.L.C., John Henry Homes, Inc., and Charleston Signature Homes, L.L.C., all sought zoning certificates to construct single-family homes; all paid a $200 zoning-application fee and, under protest, paid impact fees of $2,030.16 per application.

**{¶ 10}** Appellants named above and appellant Home Builders Association of Greater Cincinnati then brought this action against appellees, the township and its trustees, seeking a declaratory judgment, injunctive relief, and damages, alleging that the impact fees are contrary to Ohio law and are unconstitutional. The parties submitted stipulated facts and exhibits, and each side filed a motion for summary judgment. The trial court granted the township's motion, holding as follows:

> Hamilton Township, pursuant to its statutory limited police powers, may make and fund improvements to benefit new development by use of its system of impact fees, because the resolution is not in conflict with any other Ohio statute, and

4

because it is sufficiently narrowly tailored to provide services to the class of fee payers in exchange for the fees.

**{¶ 11}** The Twelfth District Court of Appeals affirmed. The court held that, contrary to appellants' arguments, the impact fees were not a prohibited form of taxation, did not conflict with general laws of the state, and did not alter the structure of township government.

**{¶ 12}** The cause is before this court upon the acceptance of a discretionary appeal. 127 Ohio St.3d 1460, 2010-Ohio-6008, 938 N.E.2d 362.

## Law and Analysis

**{¶ 13}** In Ohio, "townships are creatures of the law and have only such authority as is conferred on them by law." *State ex rel. Schramm v. Ayres*, 158 Ohio St. 30, 33, 106 N.E.2d 630 (1952). Hamilton Township is a limited-home-rule township created under R.C. Chapter 504. R.C. 504.04(A)(1) states that limited-home-rule townships may, by resolution,

[e]xercise all powers of local self-government within the unincorporated area of the township, other than powers that are in conflict with general laws, except that the township shall comply with the requirements and prohibitions of this chapter, and *shall enact no taxes other than those authorized by general law * * *.*

(Emphasis added.)

**{¶ 14}** This opinion focuses on whether the impact fees imposed by the township are taxes "other than those authorized by general law." Ohio law already empowers townships to employ specified methods of taxation to raise money to pay for police and fire service (R.C. 505.51 and 505.39), parks (R.C. 511.27 and 511.33), and roads (R.C. 5571.15, 5573.07, 5573.10, 5573.11, and

5

5573.211).  There is no dispute in this case that the impact fees at issue do not meet the requirements of those methods of taxation, so if the impact fees are actually taxes, they violate R.C. 504.04.

### Distinguishing a Fee from a Tax

{¶ 15} The fact that the township's resolution calls the assessments "fees" is certainly not sufficient to establish that the assessments are not taxes.  In order to determine whether certain assessments are taxes, we must analyze "the substance of the assessments and not merely their form."  *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow*, 62 Ohio St.3d 111, 116, 579 N.E.2d 705 (1991), fn. 5.  Although this court has stated that "[i]t is not possible to come up with a single test that will correctly distinguish a tax from a fee in all situations where the words 'tax' and 'fee' arise," *id*. at 117, we can look to our own case law and that of other jurisdictions for guidance in making our determination in this case.

### *Withrow* Factors

{¶ 16} In *Withrow*, this court considered whether assessments imposed upon owners and operators of underground storage tanks ("USTs") by the Petroleum Underground Storage Tank Release Compensation Board were taxes. The assessments helped fund the Petroleum Underground Storage Tank Financial Assurance Fund.  That fund was created "to reimburse owners and operators of USTs for the costs of corrective actions in the event of a release of petroleum into the environment and to compensate third parties for bodily injury and/or property damage resulting from such occurrences." *Withrow* at 111.  The proceeds from the assessment were kept separate from the general fund of the state treasury.  *Id.* at 116.

{¶ 17} This court cited a number of factors in concluding that the assessment in *Withrow* was not a tax, but a fee.  First, this court found it significant that the fees were imposed in furtherance of regulatory measures

6

designed to address the environmental problems caused by leaking USTs; by statute, the owners and operators of USTs were strictly liable to take corrective actions and to pay damages for leaking USTs. *Id.* The fund into which the fees were paid ensured that UST owners could meet those statutory obligations.

{¶ 18} Second, the assessments were never placed in the general fund and were to be used only "for narrow and specific purposes, all directly related to UST problems." *Withrow*, 62 Ohio St.3d at 116-117, 579 N.E.2d 705.

{¶ 19} Third, the court noted that "[a] fee is a charge imposed by a government in return for a service it provides." *Id.* at 113. And it held that in exchange for the fee, the UST owners and operators received protection that resembled insurance. *Id.* at 117.

{¶ 20} Fourth, this court was also persuaded by the fact that when the unobligated balance in the fund exceeded a certain amount, there would be no assessment for that year. Further, if the fund dipped below a certain amount, the assessing authority was permitted to charge a supplemental assessment. The court concluded, "Thus, the assessment appears to function more as a fee than as a tax, because a specific charge in return for a service is involved." *Id.*

Applying *Withrow* Factors to this Case

{¶ 21} The assessment in this case differs in several important respects from the assessment this court deemed a fee in *Withrow*. First, the township's assessment lacks the regulatory aspect of the fee charged in *Withrow*. Unlike the fee in *Withrow*, the assessment at issue is not imposed in furtherance of statutes designed to protect the public from harms associated with a specific industry. Rather, it is a revenue generator with the stated purpose of guaranteeing a consistent level of services to all members of the community. It does not encourage the assessed parties' compliance with certain statutory obligations or protect the public from specific threats.

**{¶ 22}** Second, unlike the fee collected in *Withrow*, the revenue generated by the assessment in this case is spent on typical township expenses inuring to the benefit of the entire community. It is true that the Hamilton Township assessments are not placed into the general fund; rather, the revenue goes into separate funds for roads, fire, police, and parks. However, as the court pointed out in *Withrow*, "if these assessments [are] actually taxes, the simple act by the legislature of placing them in a segregated fund [does] not transform them into fees. We must examine the substance of the assessments and not merely their form." *Withrow*, 62 Ohio St.3d at 116, 579 N.E.2d 705, fn. 5. Here, although the funds are segregated, the *use* of the money from the funds is general in nature. The money is not earmarked so that it is spent to improve the area around the particular property upon which the assessments are imposed; in other words, there are no geographic subaccounts among the accounts. For instance, there is no requirement that money placed into the police fund goes to create a police substation near a new neighborhood. Instead, the funds can be spent on any police expenditure throughout the community. Within the specific fund, money is spent in a general way, all toward the normal expenditures of government.

**{¶ 23}** Third, this court found that the assessment in *Withrow* was a fee for a service that the government provided; that is, the fund into which the fees were deposited operated, essentially, as insurance coverage for catastrophic damage caused by leaking tanks. Here, assessed parties get no particular service above that provided to any other taxpayer for the fee that they pay. As taxpayers and residents of Hamilton Township, they are entitled to police and fire protection and to use township parks and roadways. They already pay taxes for those services; in fact, when they improve their property, they pay higher taxes than they did when the property was undeveloped. But targets of the assessment receive no greater benefit than any other taxpayer despite the payment of the additional assessment.

**{¶ 24}** Finally, the fee that was charged in *Withrow* was tied to events, not the spending whims of government. In *Withrow*, UST owners were liable for a supplemental fee if the situation warranted it, that is, if the fund dwindled as tank leaks increased. Further, if the fund were at sufficient levels, the board could suspend the fees. In regard to the township assessment in this case, there is a refund of the fees only if the township decides not to spend the money. Whether the money is spent is up to the local government. Since the money is not tied to any particular type of expenditure within any of the four funds, the only way the money would not be spent is by governmental frugality. And unlike the system in place in *Withrow*, there is no mechanism to require a further assessment should the situation demand it. Thus, unlike the fee in *Withrow*, this assessment is not responsive to need. Thus, it bears less resemblance to a fee for a service than the assessment in *Withrow* did.

**{¶ 25}** Overall, an application of the *Withrow* factors in this case points to the assessments as constituting taxes.

<em>Am. Landfill</em> Analysis

**{¶ 26}** In *Am. Landfill, Inc. v. Stark/Tuscarawas/Wayne Joint Solid Waste Mgt. Dist.*, 166 F.3d 835 (6th Cir.1999), the Sixth Circuit Court of Appeals employed an analysis similar to that used in *Withrow* in considering whether assessments imposed by solid-waste-management districts on persons disposing of material at solid-waste-disposal facilities located within their districts constituted fees or taxes for purposes of the Tax Injunction Act, 28 U.S.C. 1341. The funds, collected by owners or operators of disposal facilities, were to be used for various purposes, including "preparing and implementing the district's solid waste management plan," "develop[ing] and implement[ing] * * * solid waste recycling or reduction programs," "providing financial assistance to local boards of health for water analysis and other enforcement activities," "providing financial assistance to counties for maintenance of roads, public facilities, and

emergency services which result from the location of a solid waste facility in the counties," and "assist[ing] * * * local law enforcement and boards of health [in] enforc[ing] littering and open dumping laws." *Am. Landfill* at 836.

{¶ 27} The court in *Am. Landfill* applied a three-factor analysis that had been employed by the courts in *Bidart Bros. v. California Apple Comm.,* 73 F.3d 925, 931 (9th Cir.1996) and *San Juan Cellular Tel. Co. v. Pub. Serv. Comm. of Puerto Rico*, 967 F.2d 683, 685 (1st Cir.1992) to determine whether the assessment was a fee or tax. As set forth in *Bidart,* a court should consider "(1) the entity that imposes the assessment; (2) the parties upon whom the assessment is imposed; and (3) whether the assessment is expended for general public purposes, or used for the regulation or benefit of the parties upon whom the assessment is imposed." *Bidart* at 931.

{¶ 28} The court in *San Juan* described the classic versions of a tax and a fee:

> The classic "tax" is imposed by a legislature upon many, or all, citizens. It raises money, contributed to a general fund, and spent for the benefit of the entire community. * * * The classic "regulatory fee" is imposed by an agency upon those subject to its regulation. * * * It may serve regulatory purposes directly by, for example, deliberately discouraging particular conduct by making it more expensive. * * * Or, it may serve such purposes indirectly by, for example, raising money placed in a special fund to help defray the agency's regulation-related expenses.

*San Juan* at 685.

{¶ 29} In regard to the first two factors—the entity that imposes the assessment and the entity that must pay the assessment—"[a]n assessment

10

imposed directly by the legislature is more likely to be a tax than an assessment imposed by an administrative agency" and "[a]n assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class." *Bidart*, 73 F.3d at 931, citing *San Juan,* 967 F.2d at 685.

{¶ 30} Most assessments fall somewhere near the middle of the spectrum between a fee and a tax; in such cases, the use of the funds becomes the predominant factor in making the ultimate determination:

> Both *San Juan* and *Bidart* indicate that for cases where the assessment falls near the middle of the spectrum between a regulatory fee and a classic tax, the predominant factor is the revenue's ultimate use. *See San Juan,* 967 F.2d at 685; *Bidart,* 73 F.3d at 932. When the ultimate use is to provide a general public benefit, the assessment is likely a tax, while an assessment that provides a more narrow benefit to the regulated companies is likely a fee. *See id.*

*Am. Landfill*, 166 F.3d at 837-838.

{¶ 31} In applying the *San Juan* and *Bidart* approach, the court in *Am. Landfill* determined that the assessment was a tax. The court found that the entity imposing the assessment—the local solid-waste-management district—and the parties upon whom the assessment was imposed—users of solid-waste-management facilities—were factors that weighed in favor of the assessment's being a fee. But that was balanced by the fact that the General Assembly had been involved in authorizing the districts to impose the assessment, keeping the case "near the middle of the spectrum between a pure regulatory fee and a classic tax." *Am. Landfill* at 839. The court concluded that the third factor pushed the assessment into the realm of a tax: "The revenue's ultimate use as a benefit shared

by the public and not just the waste disposal facilities indicates that the assessment here is a tax." *Id.* at 839-840. The court made that finding despite the fact that the revenues were placed in a fund separate from the general fund. The court pointed to the public purposes to which the revenue collected was to be put, including the development of recycling programs, road and public-facility maintenance, and emergency services: "These purposes 'relate directly to the general welfare of the citizens of [Ohio],' and dedication to a particular aspect of state welfare makes them 'no less general revenue raising levies.' " *Id*. at 839, quoting *Wright v. McClain,* 835 F.2d 143, 145 (6th Cir.1987).

Application of *Am. Landfill* Analysis

{¶ 32} Applying the three-factor test that the court employed in *Am. Landfill* in this case yields the conclusion that the assessment at issue is a tax. As for the first factor, the entity imposing the assessment in this case is a legislative body, not a regulatory body, which favors characterizing the assessment as a tax. In regard to the second factor, the entities paying the assessment are not part of a single industry or group. The assessment applies to a fairly large swath of people—anyone who wants to engage in any type of development in the township. However, it also is not imposed on every township resident. That pushes the needle further from a classic tax, but not into the realm of a classic fee. The third factor, the ultimate use of the revenue, places the assessment solidly in the realm of taxation. The fact that the funds from the assessments are segregated into separate accounts is irrelevant; the fact that the revenue is earmarked for police protection, fire protection, road improvement, and parks that benefit the entire community is the key factor. The assessments raise revenue for the public's benefit. All members of the community will benefit from improved roadways and parks, as well as from consistent levels of police and fire protection.

Other State Supreme Courts

**{¶ 33}** Although *Withrow* and *Am. Landfill* are instructive as to the fee-versus-tax issue, neither involved the type of assessment at issue in this case. However, other state supreme courts facing very similar matters have found that impact fees constituted taxes. A key factor in those cases was the extent of the public benefit that resulted from the assessment. In *Home Builders Assn. of Greater Des Moines v. W. Des Moines*, 644 N.W.2d 339 (Iowa 2002), the court considered an impact fee paid by land developers and builders that was used by the city to create or improve parks. The court pointed to the lack of a special benefit inuring to the targets of the fee in determining that the fee was a tax:

> [T]he fee is based on the cost of building the neighborhood parks, an expense representing the general benefit to the community at large. Therefore, the parks fee is not based on special benefits conferred on the property owners so as to fall outside the definition of a tax. *See E. Diversified Props., Inc.* [*v. Montgomery Cty.*, 319 Md. 45] 570 A.2d [850] at 855 [Md.App.1990] (holding that impact fee was not a regulatory fee where it was not based on the "service provided to the property owner"); *Haugen v. Gleason,* 226 Or. 99, 359 P.2d 108, 111 (1961) (holding fee charged as condition of plat approval was an illegal tax because the fees were not required to be used for "the direct benefit of the regulated subdivision"). To conclude otherwise would in essence permit the City to assess property for a public improvement without regard to the limitations on its taxing authority* * *.

*Id.* at 349.

**{¶ 34}** In *Mayor of Ocean Springs v. Homebuilders Assn. of Mississippi, Inc.*, 932 So.2d 44 (Miss.2006), the court addressed a city's ordinances that authorized it to collect impact fees from developers for funding various public improvements and services. In holding that the impact fees were a revenue-raising mechanism that constituted taxes, the court concluded:

> "Courts cannot fault the logic or the foresight that induces the municipality to consider the long term impact of permitted development on municipal resources and public facilities. However, in the absence of legislative intent, municipalities cannot depart from traditionally authorized methods of financing public facilities so as to allocate the costs of substantial public projects among new developments on the basis of their anticipated impact." 8 McQuillin, Municipal Corp.3rd Ed., Rev.2000, § 25.118.50 at 384.

*Id.* at 60.

Public Benefit Versus Private Benefit

**{¶ 35}** In the present case, the potential public benefit appears to be the main reason for the assessment. But in addressing the tax-versus-fee question, the court of appeals put great stock in one of the stipulations that the parties agreed to in this case, using it as proof that the assessments were made for the benefit of the targeted property:

> [Appellants'] claim flies in the face of the parties stipulated facts, which state, in pertinent part:
>
> > "The purpose of the impact fee is to benefit *the property* by providing the Township with adequate funds to provide the same

> level of service to *that property* that the Township currently affords previously developed properties." (Emphasis added.)
>
> To quote [appellants], "[i]n order to be classified as a fee, a charge must specially benefit the property that pays the fee." Based on the [parties'] stipulated facts, that is exactly what occurs here; namely, a payment to the Township to obtain a zoning certificate in order to build on property within its unincorporated areas so that "*that property*" can receive the same level of service provided to previously developed properties. By stipulating to these facts, [appellants] are now bound by their agreement.

(Emphasis sic.) *Drees Co. v. Hamilton Twp.,* 12th Dist. No. 2009-11-150, 2010-Ohio-3473, ¶ 17-19.

{¶ 36} It is unlikely that appellants would stipulate to a fact that dooms their claim. More importantly, the stipulation implicitly recognizes that the goal is for the township to have the necessary funds to allow *all* properties in the township to maintain their same level of service despite recent, rapid growth. The parties also stipulated that the impact fees were imposed "to offset increased services and improvements needed because of the development." The impact fees are intended to prevent any diminishment of services to *anyone* in the township.

{¶ 37} Lest there be any doubt as to whether the impact-fee resolution was designed to affect the whole community, the factual findings in the resolution itself contain statements indicating that maintaining the general welfare of the community is the aim of the resolution. The resolution states that the impact-fee system "assures the continuation of capital services *to benefit one of the fastest growing townships in the State of Ohio and the United States of America*, utilizing a system which is widely accepted as a valid exercise of the police power to protect health, safety and the wellbeing of the community." (Emphasis added.)

The board states in the resolution that "*the protection of the health, safety, and general welfare of the citizens and property owners of the Township*" requires that the major roadway facilities, fire-protection and police-protection facilities, and the park facilities of the township "be improved to maintain them at their current levels of service in order to meet the demands of new development." (Emphasis added.)

{¶ 38} In *Home Builders Assn. of Mississippi, Inc. v. Madison*, 143 F.3d 1006, 1012 (5th Cir.1998), the court dealt with a similar impact-fee plan and an ordinance with language similar to the resolution in this case. The ordinance stated:

> "This Ordinance shall be used for the purposes of implementing and funding the [public-improvement plan] and to otherwise further the protection and promotion of the public health, safety and welfare of the City of Madison and its citizens and to regulate the adverse effects of rapid residential development by insuring adequate public facilities and services to present and future residents of the City."

*Id.* at 1012.

{¶ 39} *Home Builders* stated, "[I]t is difficult to imagine that an ordinance designed to protect and promote the public health, safety and welfare of an entire community could be characterized as anything but a tax." *Id.*

{¶ 40} We reach the same conclusion. Here, the assessment results in no direct service to the landowner, other than the issuance of a zoning certificate, for which there is already a separate $200 fee. When the amount of the fee exceeds the cost and expense of the service, the fee constitutes a tax. *Granzow v. Montgomery Cty. Bur. of Support*, 54 Ohio St.3d 35, 38, 560 N.E.2d 1307 (1990).

The impact fees are a revenue-generating measure designed to support infrastructure improvements benefiting the entire township. "Taxation refers to those general burdens imposed for the purpose of supporting the government, and more especially the method of providing the revenues which are expended for the equal benefit of all the people." *Cincinnati v. Roettinger*, 105 Ohio St. 145, 153-154, 137 N.E. 6 (1922).

### Conclusion

**{¶ 41}** Having analyzed the substance of the assessments, and not merely their form, we conclude that the impact fees charged by Hamilton Township in this case constitute taxes. Since those taxes were not authorized by general law, Hamilton Township was not authorized to impose them pursuant to R.C. 504.04(A)(1). Accordingly, we reverse the judgment of the court of appeals and remand the matter to the trial court.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and CELEBREZZE, JJ., concur.

FRANK D. CELEBREZZE JR., J., of the Eighth Appellate District, sitting for MCGEE BROWN, J.

_____

Keating, Muething & Klekamp, P.L.L., Joseph L. Trauth Jr., Thomas M. Tepe Jr., and Charles M. Miller; and Aronoff Rosen & Hunt, Richard A. Paolo, Kevin L. Swick, and Edward P. Akin, for appellants.

Rendigs, Fry, Kiely & Dennis, L.L.P., Wilson G. Weisenfelder Jr., James J. Englert, and Lynne M. Longtin; and Keating Ritchie & McGary, L.P.A., and Warren J. Ritchie, for appellees.

Keating Ritchie & McGary, L.P.A., and Thomas T. Keating, urging affirmance for amicus curiae Ohio Township Association.

Maurice A. Thompson, urging reversal for amici curiae 1851 Center for Constitutional Law and the Tax Foundation.

Christopher M. Whitcomb, urging reversal for amicus curiae National Association of Home Builders.

Robert N. Eshenbaugh Jr., urging reversal for amicus curiae Ohio Home Builders Association.

————————————