[Cite as *Corr. Corp. of Am. v. Youngstown*, 2013-Ohio-2548.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CORRECTIONS CORPORATION OF AMERICA, | ) ) ) | CASE NO. 12 MA 111 |
| PETITIONER-APPELLANT, | ) ) | |
| VS. | ) ) | O P I N I O N |
| CITY OF YOUNGSTOWN, et al., | ) ) | |
| RESPONDENTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas Court,
                                 Case No. 10CV224.


JUDGMENT:                        Reversed.


APPEARANCES:
For Petitioner-Appellant:         Attorney Timothy Bojanowski
                                  3100 West Ray Road, Suite 300
                                  Chandler, Arizona  85226


For Respondents-Appellees:        Attorney Steven Friedman
                                  Attorney Bruce Khula
                                  4900 Key Tower
                                  127 Public Square
                                  Cleveland, Ohio  44114-1304


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro

                                  Dated:  June 17, 2013

VUKOVICH, J.

**{¶1}** Corrections Corporation of America appeals the trial court's decision entering summary judgment in favor of the City of Youngstown, et al. on CCA's request for declaratory and injunctive relief. Specifically, CCA sought to enjoin the City from collecting a $1 per day per prisoner tax under a new city ordinance.

**{¶2}** CCA's threshold argument is that the ordinance was enacted in violation of the City's charter, which requires a vote of the electorate before enactment of an occupational tax. The City claims that the tax is not an occupational tax. We conclude that the tax at issue here is an occupational tax.

**{¶3}** Accordingly, the trial court's judgment is reversed, the prison tax ordinance is nullified, and the City of Youngstown is enjoined from enforcing the ordinance.

STATEMENT OF THE CASE

**{¶4}** As background, the City was previously involved in a lawsuit as a result of Mahoning County threatening to charge the city for housing prisoners at the county jail. At the time, the county housed some prisoners for the United States Marshal's Service for a daily rate of $65-$70. (Bozanich Depo. at 49). These prisoners were thereafter transferred to the Northeast Ohio Correctional Center, a facility which is owned and operated by CCA and which houses some federal prisoners under a contract with the Bureau of Prisons and some under a contract with the U.S. Marshal's.

**{¶5}** When the prisoners were transferred to CCA, CCA began receiving the daily rate. However, $3 per day stayed with the county for administrative purposes. *Id.* at 51. When the city's finance director discovered this, he asked CCA why it was not using the city for the services which resulted in the pass-through fee and voiced that it was not fair that the county got the entire $3 per day per inmate fee when the city provided fire, police, water, sewer, etc. *Id.* at 56-61. Sometime after this sentiment was expressed to the federal government, the $3 fee to the county was terminated.

**{¶6}** In June of 2009, the City passed an ordinance imposing a $1 per day fee for each prisoner housed in a private institution in the City as a result of convictions of crimes occurring outside of Mahoning County. The ordinance containing the Prisoner Accommodation Fee was to take effect on December 1, 2009 and was declared to be an emergency measure necessary for the immediate preservation of the public peace, welfare, and safety.

**{¶7}** In November of 2009, the City amended the ordinance to delete the reference to convictions of crimes occurring outside of the county. The amended tax was thus generally payable based upon every prisoner or inmate serving a jail or prison sentence at any private institution in the City. Once again, the ordinance was declared to be an emergency measure necessary for the immediate preservation of the public peace, safety, and welfare. The City also expressed a desire to maintain the original effective date of the ordinance.

**{¶8}** In December of 2009, CCA served the City with its objections to the tax and a notice of intent to file suit under R.C. 2723.01 et seq., which provides that the common pleas court can entertain a suit to enjoin the illegal levy of taxes and assessments. On January 22, 2010, CCA filed a complaint for declaratory and injunctive relief against the City and its various officials, asking the court to declare that the tax was not enforceable for multiple reasons. Both sides filed competing motions for summary judgment.

**{¶9}** CCA relied on the background outlined above in support of its claim that intentional discrimination and ill-will were the city's motives behind the tax. The city responded that it had to have certain fire and police personnel ready and trained due to the existence of the 2,000-bed prison in an area where they otherwise may have closed a fire station. The number of visitors to the prison was also noted. With the annual budget of the fire department at $15 million and the annual budget of the police department at $20 million and lay-offs looming due to declining tax revenues, the city decided a prisoner accommodation fee, which could total over half a million dollars per year from CCA, would bolster the budget for their safety forces. *Id.* at 74, 83-84.

**{¶10}** On April 13, 2012, a magistrate issued a decision denying CCA's motion for summary judgment, denying part of the City's motion, and sustaining part of the City's motion. The magistrate found genuine issues of material fact for trial regarding CCA's equal protection, interstate commerce, and due process arguments and thus denied the City's motion for summary judgment on these grounds.

**{¶11}** Both sides filed timely objections to the magistrate's decision. On May 24, 2012, the trial court entered summary judgment in favor of the City on all of CCA's claims. CCA filed a timely notice of appeal. Their appellate brief sets forth seven assignments of error. The first four raise constitutional claims against the ordinance. The fifth assignment complains that the city enacted the ordinance as an emergency measure without stating the emergency (noting that the city admits it declares ordinances to be emergencies as matter of custom). The seventh assignment of error raises procedural matters which arose while objecting to the magistrate's decision.

**{¶12}** As we agree with CCA's threshold argument (contained in assignment of error number six) that city council was not permitted to enact this occupational tax without voter approval, we shall not address the other assignments of error. The procedural argument is irrelevant since our decision is in their favor on the threshold issue, and the remaining substantive arguments all depend on the ordinance being permitted in the first instance. For instance, the city contends that it could pass the ordinance as an emergency because it was not an occupational tax. As we conclude below that the tax is in fact an occupational tax which could only be passed with voter approval, the emergency ordinance provision is now irrelevant.

**{¶13}** Regarding the four constitutional arguments, appellate courts are to avoid deciding questions of constitutional law if a case can be decided on non-constitutional grounds. *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9; *Hall China Co. v. Public Utilities Comm.*, 50 Ohio St.2d 206, 210, 364 N.E.2d 852 (1997); *Norandex, Inc. v. Limbach*, 69 Ohio St.3d 26, 28, 630 N.E.2d 329 (1994); *In re Boggs*, 50 Ohio St.3d 217, 221, 553 N.E.2d 676 (1990); *Kinsey v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 49 Ohio St.3d 224, 225, 551 N.E.2d 989 (1990). As we are nullifying the ordinance as invalidly enacted,

its contents and effects do not exist to review under the Constitution. We thus proceed to analyze only assignment of error number six.

OCCUPATIONAL TAX ISSUE

{¶14} CCA's sixth assignment of error urges:

{¶15} "AS AN OCCUPATIONAL TAX, THE PRISONER TARIFF REQUIRED VOTER APPROVAL UNDER CHAPTER 12 OF THE YOUNGSTOWN CITY CHARTER."

{¶16} Section 12 of Youngstown's City Charter provides in pertinent part:

{¶17} "nor shall any ordinance, resolution or any other measure ever be passed providing for the levying or assessing of an occupational tax, upon the various trades, professions, occupations, businesses or employments carried on and performed in the City of Youngstown, without having first submitted such ordinance, resolution, or other measure providing therefor, to a vote of the electors of the City of Youngstown, and having been approved by a majority of the electors voting thereon. (Amended November 3, 1925)."

{¶18} CCA argues that the prisoner accommodation fee is such an occupational tax which cannot be passed without first being submitted to the voters for approval. In support, CCA initially urges that the ordinance contains a tax rather than a fee. CCA points out that a fee is charged by the government in return for a service and must be proportionate to the service or it becomes a tax. *See, e.g., Drees Cty. v. Hamilton Twp.*, 132 Ohio St.3d 186, 2012-Ohio-2370, 970 N.E.2d 916, ¶ 15, 40; *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow*, 62 Ohio St.3d 111, 116, 579 N.E.2d 705 (1991), fn. 5 (look to the substance, not the form, of the enactment on a case-by-case basis to determine if it is a fee or a tax). However, the City of Youngstown already admitted that the ordinance contains a tax and that it is not a fee assessed for the provision of a specific service to the prison in return for a charged amount. *See* City's Opposition to CCA's Motion for Summary Judgment at 4-5 (Nov. 25, 2011). And, on appeal, they proceed under the premise that the ordinance did impose a tax. The threshold issue remaining here is thus whether the tax constitutes an occupational tax.

{¶19} CCA urges that the tax fits the definition of an occupational tax because it was imposed against the specific occupation or business of a private entity who houses prisoners. The City responds by urging that when Section 12 of the Charter was last amended in 1925, there was no ability to levy income taxes and the occupational tax referred to is the equivalent of the modern commercial activity tax. The City concludes that the tax is not an occupational tax as it was not assessed for the privilege of operating a business in the City but in order to preserve the public peace, welfare, and safety and to raise revenue due to the police and fire burden caused by the unique environment of a private prison.

{¶20} The City of Youngstown once passed an ordinance imposing a $10 annual fee on each juke box in the city and requiring a license prior to operation. Various juke box operators brought suit against the city seeking a permanent injunction enjoining enforcement of the ordinance. The trial court found that the ordinance had no effect because it was passed in violation of Section 12 of the City Charter, which provides that no ordinance containing an occupational tax shall be passed without first being submitted to a vote of the city's electorate and having been approved by a majority of the voters. *Edward v. City of Youngstown*, Mah. Cty. C.P. No. 119318 (copy contained in CCA's filings). The city appealed this decision and lost its appeal.

{¶21} This court first pointed to the distinction between a licensing fee and a tax, noting that an excise tax is the exercise of taxing power while licensing is the exercise of police power. *Edward v. City of Youngstown*, 7th Dist. No. 3036 (copy contained in CCA's filings). The court stated that taxing is a revenue producer but licensing cannot be enacted in order to raise revenue and then concluded that the fee imposed was out of proportion to the costs to the city associated with licensing a juke box and that the fee was used to raise revenue. *Id.* The court proceeded to declare the ordinance null and void and restrained the city from enforcing it. *Id.*

{¶22} Although the appellate court did not expressly adopt the trial court's statement that if it was not a valid licensing fee, then it was an occupational tax enacted in violation of the city charter, there are Supreme Court cases classifying certain measures as occupational taxes which support CCA's position here.

**{¶23}** In one case, the City of Cincinnati's council passed an ordinance imposing an annual tax on all persons, firms, and corporations pursuing any of the trades, professions, occupations, vocations, and businesses named therein; the ordinance then named manufacturers of bottles and glassware articles and osteopathic physicians. *State ex rel. Zielonka v. Carrel*, 99 Ohio St. 220, 124 N.E. 134 (1919). A challenge was made as to whether the state could impose such a tax, and if so, whether a city could impose that tax where the state did not. The Court answered both questions in the affirmative. *Id.* at 229. As there was no issue with that city's charter requiring such a tax to be submitted to the electorate, the main holding of that case is not on point here.

**{¶24}** Pertinently, *the Supreme Court did define the type of tax involved as an occupational tax.* In doing so, the Court stated that a tax on occupations is an excise tax and defined excise taxes as: "Taxes laid upon the manufacture, sale, or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges." *Id.* at 225. The Court equated the concept with "a special tax on business." *Id.* at 226. "An occupational tax is in no sense a tax upon property, but is well understood to be a tax on the right to carry on trade or to transact business." *Id.*

**{¶25}** In another case, the City of Marion enacted an ordinance stating in pertinent part that each slaughter house, bakery, newspaper publisher, and mill shall pay $100 per year *plus $2 for each person employed*. *Marion Foundry v. Landes*, 112 Ohio St. 166, 147 N.E.302 (1925). The Supreme Court found that the tax was imposed *on the privilege of engaging in an occupation*. *Id.* at 174. In overruling various arguments by the foundry, the Supreme Court found no distinction between that tax and the occupational tax in *Zielonka. Id. See also Stredelman v. City of Cincinnati*, 123 Ohio St. 542, 545-546, 176 N.E.2d 215 (1931) (ordinance requiring every person, firm, agency, corporation engaged in business of selling insurance to pay a certain tax was described as an occupational tax).

**{¶26}** The City's suggestion that the reference to an occupational tax in Section 12 of the City Charter is from a bygone era, a time when income tax was not permissible, does not present a valid reason to ignore a charter provision that still

exists. The tax at issue here would not appear to be different from the one Cincinnati enacted on its osteopathic physicians and its glass manufacturers or the one Marion imposed upon its mills, bakeries, etc. Although the City of Youngstown tries to distinguish its tax because they provided reasons in discovery why the prison increased the City's costs for running its police and fire departments, they cite no law that would make these facts dispositive of whether something they admit is a tax is an occupational tax.

**{¶27}** As established above, an occupational tax is broadly defined by the Supreme Court. The tax at issue herein is "a special tax on [the] business" of running a private prison or jail and "a tax on the right to carry on" the occupation or corporate privilege of running a private prison or jail. *See Zielonka*, 99 Ohio St. at 225-226. Merely because the amount of the tax here is based upon the amount of prisoners does not cause the tax to lose its character as a tax on the privilege of operating a particular business in the City. Notably, the tax in *Marion Foundry* was partially based upon the number of employees.

**{¶28}** We conclude that the City of Youngstown's prison tax ordinance is not valid because it contains an occupational tax passed without a public vote in violation of Section 12 of the City's charter. CCA's sixth assignment of error is hereby sustained. Accordingly, the trial court's judgment is reversed, the prison tax ordinance is nullified, and the City of Youngstown is enjoined from enforcing this ordinance.

Donofrio, J., concurs.
DeGenaro, P.J., concurs.