Kennedy, J.,
dissenting.
*397 {¶ 40} Respectfully, I dissent. I would hold that the Northeast Ohio Regional Sewer District (the “Sewer District”) lacks authority to manage stormwater as proposed in the Sewer District’s Stormwater Management Code (“SMC”) or to charge a fee to manage stormwater.

R.C. Chapter 6119

{¶ 41} R.C. Chapter 6119 addresses the creation and authority of regional sewer districts. As creatures of statute, sewer districts “have no more authority than that conferred upon them by the statute, or what is clearly implied therefrom.” See Hall v. Lakeview Local School Dist. Bd. of Edn., 63 Ohio St.3d 380, 383, 588 N.E.2d 785 (1992). “Implied powers are those that are incidental or ancillary to an expressly granted power; the express grant of power must be clear, and any doubt' as to the extent of the grant must be resolved against it.” In re Guardianship of Spangler, 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067, ¶ 17.
{¶ 42} The Sewer District is authorized “[t]o provide for the collection, treatment, and disposal of waste water within and without the district” pursuant to R.C. 6119.01. “ ‘Waste water’ means any storm water and any water containing sewage or industrial waste or other pollutants or contaminants derived from the prior use of the water.” R.C. 6119.011(K). I agree with appellees and the court of appeals that “waste water” necessarily means water containing waste.
{¶ 43} The majority holds that R.C. 6119.011(K) authorizes the District to manage two types of water — stormwater and water that is polluted or contaminated. I disagree. In my view, the definition of “waste water” is water that “contain[s] sewage or industrial waste or other pollutants or contaminants.” R.C. 6119.011(K). This conclusion is supported by the purpose of the Sewer District, which is “to provide for collection, treatment, and disposal of waste water.” (Emphasis added.) R.C. 6119.01. Therefore, because the Sewer District is only authorized to treat water that contains waste, it has no authority to treat stormwater runoff, which the SMC defines as stormwater “that flows into ditches, water courses, storm sewers, or other concentrated flow patterns during and following precipitation, including rain runoff, snowmelt runoff, and surface runoff.”

The SMC

{¶ 44} The SMC proposes a comprehensive, broad-ranging plan to manage stormwater that is beyond the Sewer District’s authority under R.C. Chapter 6119. The Sewer District found that flooding and streambank erosion are “significant threats” within the District. Consequently, the Sewer District determined that a “Regional Stormwater Management Program is necessary” to address these threats and their impacts on northeast Ohio’s water resources. *398 The regional stormwater-management program would include “[cjomprehensive management of the Regional Stormwater System,” “construction and implementation of necessary Stormwater Control Measures to address current, and minimize new flooding and erosion issues affecting the Regional Stormwater System,” as well as “inspection, operation, maintenance, and monitoring activities,” including but not limited to clearing debris from blocked culverts, bridge abutments, and repair of streambank erosion. The “Regional Stormwater System” is extensive and includes
[tjhe entire system of watercourses, stormwater conveyance structures, and Stormwater Control Measures in the District’s service area that are owned and/or operated by the District or over which the District has right of use for the management of stormwater, including both naturally occurring and constructed facilities. The Regional Stormwater System shall generally include those watercourses, stormwater conveyance structures, and Stormwater Control Measures receiving drainage from three hundred (300) acres of land or more.
{¶ 45} The SMC further states that it “is applicable to activities and persons on all parcels within the Sewer District’s service area.” The District will charge every parcel of land within the District a stormwater fee to fund the aforementioned stormwater-control measures.
{¶ 46} Nowhere in R.C. Chapter 6119 is flooding or erosion control discussed. In large part, the SMC seeks to manage “pure” stormwater, i.e., water resulting from precipitation that is not mixed with pollutants or contaminants and that never enters the sanitary sewer system. Management of this water is beyond the scope of the Sewer District’s authority, which is to collect, treat, and dispose of waste water, which is water that contains waste, i.e., pollutants or contaminants. Therefore, I would hold that the Sewer District has no statutory authority to implement the SMC.

Stormwater “Fees”

{¶ 47} Initially, I will address the concurring and dissenting opinion’s assertion that the issue of whether a stormwater fee is a lawful tax is not properly before the court.
{¶ 48} Even though the reasons are not typically memorialized, this court may reject one or more propositions of law or an entire discretionary appeal for any number of reasons. See Williamson v. Rubich, 171 Ohio St. 253, 253-254, 168 N.E.2d 876 (1960), citing Ohio Constitution, Article IV, Section 6 (whether questions presented to this court for appellate review “are in fact ones of public *399 or great general interest rests within the discretion of the court”). However, I can find no authority that a rejected proposition of law creates a bar or waiver upon a party’s argument when set forth in a legitimate response to an opposing party’s proposition of law that has been accepted by the court. Nor can I find any authority that would preclude the court from considering and relying upon such an argument.
{¶ 49} The Sewer District raised three propositions of law in its discretionary appeal to this court. We accepted the Sewer District’s first two propositions for review on their merits, 138 Ohio St.3d 1413, 2014-Ohio-566, 3 N.E.3d 1216, but declined to review the third proposition, which stated, “Stormwater management programs, paid for through charges for stormwater management services, do not violate the Ohio or United States Constitutions. Further, such charges, when based upon the amount of impervious surface on a property, do not constitute an illegal tax.”
{¶ 50} One of the two propositions that we accepted stated, “A district formed pursuant to R.C. Chapter 6119 is authorized to manage stormwater which is not combined with sewage, and to impose a charge for that purpose. Such a charge is one ‘for the use or service of a water resource project or any benefit conferred thereby.’ ” (Emphasis added.)
{¶ 51} In response to that proposition, appellee city of Beachwood argued in its merit brief in part that “[t]he Stormwater Fee is actually an unauthorized tax that the Sewer District is using to avoid other required R.C. Chapter 6119 revenue-generating procedures.” Beachwood’s argument is an apt challenge to the Sewer District’s assertion that the proposed charge for stormwater management is authorized. To prevent Beachwood from making such an argument based on our initial declination to consider this issue would infringe upon Beachwood’s ability to make arguments of its own choosing and to fully respond to the Sewer District’s propositions of law that we accepted in this appeal. And unlike issues raised for the first time in a reply brief, where the opposing party has no ability to respond, Beachwood raised the unlawful tax argument in its merit brief, affording the Sewer District an opportunity to refute the argument in its reply brief. Compare In re Z.C., 12th Dist. Warren Nos. CA2005-06-065, CA2005-06-066, CA2005-06-081, and CA2005-06-082, 2006-Ohio-1787, 2006 WL 902358, ¶ 20 (raising a new assignment of error in a reply brief precludes the opposing party from responding to that argument).
{¶ 52} Obviously, this court may reject any argument presented by a party, but this court’s refusal to review a proposition of law should not bar an opposing party from later using the same or a similar issue raised in that proposition in a legitimate, responsive argument to an opposing party’s proposition of law that is being considered by the court, nor should it prevent this court from relying upon *400 such an argument. Under the facts of this case, I would- hold that the court is justified in considering Beachwood’s responsive argument that the Sewer District’s proposed fee is really an unlawful tax, even though the court declined to accept the Sewer District’s proposition of law on that issue for review. Having addressed this threshold issue, I will proceed to address the merits of whether the stormwater fee is an unlawful tax.
{¶ 53} A sewer district may “charge, alter, and collect rentals or other charges, including penalties for late payment, for the use or services of any water resource project or any benefit conferred thereby.” R.C. 6119.09; see also R.C. 6119.06(W)(1). A “water resource project” is defined under R.C. 6119.011(G) as “any waste water facility or water management facility acquired, constructed, or operated by or leased to a regional water and sewer district or to be acquired, constructed, or operated by or leased to a regional water and sewer district under this chapter * * *.”
{¶ 54} In this case, the Sewer District, through the SMC, seeks to impose a “stormwater fee” on parcels of land in the District to pay for the management of stormwater. The fee, which is “based upon a calculation of the amount of Impervious Surface on a parcel[,] shall be imposed on every parcel within the District’s service area.”
{¶ 55} In my view, this fee is actually a tax, which does not appear to have been lawfully imposed. See R.C. 6119.18; see also Sanborn v. Hamilton Cty. Budget Comm., 142 Ohio St.3d 20, 2014-Ohio-5218, 27 N.E.3d 498, ¶ 5-7, citing Ohio Constitution, Article XII, Section 2.
{¶ 56} “It is not possible to come up with a single test that will correctly distinguish a tax from a fee in all situations * * State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow, 62 Ohio St.3d 111, 117, 579 N.E.2d 705 (1991). Therefore, “[djetermining whether an assessment is a fee or a tax must be done on a case-by-case basis dependent upon the facts and circumstances surrounding each assessment.” Id. at 115.
{¶ 57} Some factors that may indicate that an assessment is a fee include the following: (1) the assessment is “imposed in furtherance of regulatory measures,” (2) the assessment is not placed in the general fund, but is used only to fund the regulatory purpose, (3) the assessment is “ ‘imposed by a government in return for a service it provides,’ ” and (4) the assessment is discontinued when the unobligated balance in the fund reaches a certain level. Drees Co. v. Hamilton Twp., 132 Ohio St.3d 186, 2012-Ohio-2370, 970 N.E.2d 916, ¶ 16-20, citing and quoting Withrow at 111, 113, 116-117.
{¶ 58} In Natl. Cable Television Assn., Inc. v. United States, 415 U.S. 336, 340-341, 94 S.Ct. 1146, 39 L.Ed.2d 370, the court commented:
*401 Taxation is a legislative function [where the legislature] may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. A fee, however, is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant, not shared by other members of society.
(Emphasis added.)
{¶ 59} An example of a fee charged for a service is found in Wyatt v. Trimble Twp. Waste Water Treatment Dist., 4th Dist. Athens No. 1521, 1992 WL 329386 (Nov. 3,1992). In Wyatt, the Trimble Township Waste Water Treatment District charged a homeowner for the installation of a plug at the point where each premises was to be connected to an existing sanitary sewer system for the purpose of waste-water treatment. The court found that the fee was in return for a benefit conferred, i.e., treatment of the homeowner’s waste water. Id. at *3.
{¶ 60} In Bolt v. Lansing, 459 Mich. 152, 587 N.W.2d 264 (1998), the Supreme Court of Michigan addressed whether a stormwater service charge imposed by the city of Lansing on its residents for the purpose of stormwater control was a fee or a tax.
{¶ 61} In Bolt, Lansing decided to separate its combined sanitary and storm sewers. To finance this project, Lansing decided to impose a stormwater service charge. Similar to the instant case, the fee was based on the amount of impervious surface that a parcel contained. The court stated:
A proper fee must reflect the bestowal of a corresponding benefit on the person paying the charge, which benefit is not generally shared by other members of society. Nat’l Cable Television Ass’n v. United States & Federal Communications Comm., 415 U.S. 336, 340-342, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). Where the charge for either storm or sanitary sewers reflects the actual costs of use, metered with relative precision in accordance with available technology, including some capital investment component, sewerage may properly be viewed as a utility service for which usage-based charges are permissible, and not as a disguised tax.
Id. at 164-165.
{¶ 62} But the court held that “the lack of correspondence between the [stormwater service] charges and the benefit conferred demonstrates that the *402 city has faded to differentiate any particularized benefits to property owners from the general benefits conferred on the public.” Id. at 166. The court continued:
This conclusion is buttressed by the fact that the acknowledged goal of the ordinance is to address environmental concerns regarding water quality. Improved water quality in the Grand and Red Cedar Rivers and the avoidance of federal penalties for discharge violations are goals that benefit everyone in the city, not only property owners.

Id.

{¶ 63} Pursuant to my interpretation of “waste water” above, I do not believe that the Sewer District has authority to manage stormwater; consequently, the assessment fails to support a regulatory purpose, which is a factor that can support a finding that it is indeed a fee and not a tax. See Drees Co., 132 Ohio St.3d 186, 2012-Ohio-2370, 970 N.E.2d 916, at ¶ 16-20. However, even assuming that the Sewer District has statutory authority to manage stormwater as proposed in the SMC, the purported fee fails to meet other indicia of a true fee.
{¶ 64} In the instant case, the Sewer District found that the SMC is necessary (1) to prevent flooding to public and private property, (2) to prevent “[sjtreambank erosion[, which] is a significant threat to public and private property, water quality, wildlife, and aquatic and terrestrial habitats,” and (3) to prevent “damage} to] the water resources of Northeast Ohio, [which] impairfs] the ability of these waters to sustain ecological and aquatic systems.”
{¶ 65} Despite the district’s claims that the SMC will benefit private property, I would hold that alleviating these problems results in a benefit that is conferred on the general public rather than on individual property owners. See Natl. Cable Television Assn., Inc., 415 U.S. at 340-342, 94 S.Ct. 1146, 39 L.Ed.2d 370; Bolt, 459 Mich. at 164-165, 587 N.W.2d 264.
{¶ 66} Further, as evidenced by this lawsuit, at minimum there are numerous municipalities (e.g., Beachwood, Bedford Heights, Brecksville, Independence, Lyndhurst, and Strongsville) and other entities (e.g., Highlands Business Park, L.L.C., Lakepoint Office Park, L.L.C., Park East Office Park, L.L.C., and the Ohio Counsel of Retail Merchants) that oppose the SMC. Voluntary acceptance of a service is another indicator that an assessment is a fee and not a tax. Natl. Cable Television Assn. at 340.
{¶ 67} For all the aforementioned reasons, I would hold that the Sewer District’s stormwater fee is not a fee, but an unlawful tax.
*403 Thacker Martinsek, L.P.A., and Mark I. Wallach; Calfee, Halter & Griswold, L.L.P., James F. Lang, Matthew J. Kucharson, and Molly A. Drake; and Marlene Sundheimer, Northeast Ohio Regional Sewer District Director of Law, for appellant.
Berns, Ockner & Greenberger, L.L.C., Sheldon Berns, Paul Greenberger, Benjamin J. Ockner, Jordan Berns, Timothy J. Duff, and Gary F. Werner, for appellees Ohio Council of Retail Merchants, Greater Cleveland Association of Building Owners and Managers, Cleveland Automobile Dealers Association, CADA Properties, L.L.C., Northern Ohio Chapter of NAIOP, Association for Commercial Real Estate, Northeast Ohio Apartment Association, Snowville Service Associates, L.L.C., Boardwalk Partners, L.L.C., Creekview Commons, L.L.C., Fargo Warehouse, L.L.C., Highlands Business Park, L.L.C., JES Development, Ltd., Lakepoint Office Park, L.L.C., Landerbrook Point, L.L.C., Newport Square, Ltd., Park East Office Park, L.L.C., Pavilion Properties, L.L.C., and WGG Development, Ltd.
Taft, Stettinius & Hollister, L.L.P., John B. Nalbandian, W. Stuart Dornette, Stephen M. O’Bryan, Gregory J. O’Brien, and Michael J. Zbiegien Jr., for appellees city of Beachwood, city of Bedford Heights, village of Glenwillow, city of Independence, city of Lyndhurst, village of Oakwood, city of Olmsted Falls, and city of Strongsville.
Matty, Henrikson & Greve, L.L.C., David J. Matty, Shana A. Samson, and Justin Whelan, for appellee city of Brecksville.
Barbara A. Langhenry, Director of Law, Harold A. Madorsky, and Kate E. Ryan, urging reversal for amicus curiae city of Cleveland.
McMahon DeGulis, L.L.P., Andrea M. Salimbene, Gregory J. DeGulis, and Erica M. Spitzig, urging reversal for amici curiae National Association of Clean Water Agencies and Association of Ohio Metropolitan Wastewater Agencies.
Jones Day, Yvette McGee Brown, and Chad Readier, urging reversal for amici curiae village of Cuyahoga Heights, village of Moreland Hills, and Orange Village.
Scott Claussen, urging reversal for amicus curiae city of Brooklyn.

Conclusion

{¶ 68} Because I would hold that R.C. Chapter 6119 does not authorize the type of stormwater regulation that the SMC seeks to impose and that the stormwater fee is actually an unlawful tax, I would affirm the judgment of the court of appeals and hold that the Sewer District does not have the authority to implement the SMC. Accordingly, I respectfully dissent.
O’Donnell, J., concurs in the foregoing opinion.
*404 Neal M. Jamison, urging reversal for amicus curiae city of Brook Park.
Jerome Dowling, urging reversal for amicus curiae village of Brooklyn Heights.
Thomas P. O’Donnell, urging reversal for amicus curiae village of Highland Hills.
Peter H. Hull, urging reversal for amicus curiae city of Middleburg Heights.
Dale F. Pelsozy, urging reversal for amicus curiae Olmsted Township.
Michael Pokorny, urging reversal for amicus curiae city of Parma Heights.
Joseph W. Diemert Jr. & Associates Co., L.P.A., and Joseph W. Diemert Jr., urging reversal for amicus curiae Mayfield Village.
Waldheger Coyne Co., L.P.A., and Luke McConville, urging reversal for amicus curiae village of Newburgh Heights.
Timothy G. Dobeck, urging reversal for amicus curiae city of Parma.
Richard A. Pignatiello, urging reversal for amicus curiae city of Seven Hills.
William M. Ondrey Gruber, urging reversal for amicus curiae city of Shaker Heights.
David Lambros, urging reversal for amicus curiae village of Valley View.
Michael P. Lograsso, urging reversal for amicus curiae city of South Euclid.
Calfee, Halter & Griswold, L.L.P., and Teresa Metcalf Beasley, urging reversal for amicus curiae city of Warrensville Heights.
Rosalina M. Fini; and Thompson Hine, L.L.P., Michael L. Hardy, Karen E. Rubin, and Devin A. Barry, urging reversal for amicus curiae Cleveland Metropolitan Park District.
Albers & Albers, Eric Luckage, and John Albers, urging reversal for amici curiae Coalition of Ohio Regional Districts, Deerfield Regional Storm Water District, and ABC Water and Storm Water District.
Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, Jeffrey Jarosch, Deputy Solicitor, and Aaron S. Farmer, Assistant Attorney General, urging reversal for amicus curiae state of Ohio.
Penny L. Sisson, pro se, urging affirmance for amicus curiae Penny L. Sisson.
Eugene P. Holmes, pro se, urging affirmance for amicus curiae Eugene P. Holmes.
Michael J. Jogan, pro se, urging affirmance for amicus curiae Michael J. Jogan.
Maurice A. Thompson, urging affirmance for amici curiae 1851 Center for Constitutional Law and Ohio Real Estate Investors Association.