THE STATE, EX REL. PETROLEUM UNDERGROUND STORAGE TANK RELEASE COMPENSATION BOARD ET AL., *v.* WITHROW, TREASURER.

[Cite as *State, ex rel. Petroleum Underground Storage Tank Release Comp. Bd., v. Withrow* (1991), 62 Ohio St.3d 111.]

(No. 91–313—Submitted September 10, 1991—Decided November 13, 1991.)

*Vorys, Sater, Seymour & Pease, Suzanne K. Richards, Douglas L. Rogers, James C. Becker* and *David A. Westrup,* for relators.

*Lee I. Fisher,* Attorney General, *Loren L. Braverman* and *Cherry Lynne Poteet,* for respondent.

*Porter, Wright, Morris & Arthur, Anthony J. Celebrezze, Jr.* and *Kathleen McManus Trafford,* urging granting of the writ for *amici curiae,* Ohio

Petroleum Council and its members and Ohio Petroleum Marketers Association.

———

ALICE ROBIE RESNICK, J.  This action tests the constitutionality of that portion of R.C. Chapter 3737 which grants the board the authority to issue revenue bonds.  See R.C. 3737.90(B)(6) and 3737.94.  The narrow issue which arises is whether the assessments that make up the Assurance Fund are "moneys raised by taxation."  If the moneys are taxes (as opposed to fees), as respondent contends, then they may not be "obligated or pledged for the payment of bonds," and that portion of R.C. Chapter 3737 must be unconstitutional.  See Section 13, Article VIII of the Ohio Constitution.[2]

A fee is a charge imposed by a government in return for a service it provides; a fee is not a tax.  *Cincinnati v. Roettinger* (1922), 105 Ohio St. 145, 153, 137 N.E. 6, 8.  Therefore, if the moneys assessed are fees and not taxes, a writ of mandamus from this court is proper to compel the Treasurer to perform her duty.

Relators must show the existence of three circumstances for a writ of mandamus to issue from this court: (1) relators must have a clear legal right to the relief prayed for; (2) respondent must be under a clear legal duty to perform the acts; and (3) relators must have no plain and adequate remedy in the ordinary course of the law.  *State, ex rel. Berger, v. McMonagle* (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 50–51, 451 N.E.2d 225, 227, certiorari denied

———

2.  Section 13, Article VIII of the Ohio Constitution reads, in pertinent part:

  "To create or preserve jobs and employment opportunities, to improve the economic welfare of the people of the state, to control air, water, and thermal pollution, or to dispose of solid waste, it is hereby determined to be in the public interest and a proper public purpose for the state or its political subdivisions, taxing districts, or public authorities, its or their agencies or instrumentalities, or corporations not for profit designated by any of them as such agencies or instrumentalities, to acquire, construct, enlarge, improve, or equip, and to sell, lease, exchange, or otherwise dispose of property, structures, equipment, and facilities within the State of Ohio for industry, commerce, distribution, and research, to make or guarantee loans and to borrow money and issue bonds or other obligations to provide moneys for the acquisition, construction, enlargement, improvement, or equipment, of such property, structures, equipment and facilities.  Laws may be passed to carry into effect such purposes and to authorize for such purposes the borrowing of money by, and the issuance of bonds or other obligations of, the state, or its political subdivisions, taxing districts, or public authorities, its or their agencies or instrumentalities, or corporations not for profit designated by any of them as such agencies or instrumentalities, and to authorize the making of guarantees and loans and the lending of aid and credit, which laws, bonds, obligations, loans, guarantees, and lending of aid and credit shall not be subject to the requirements, limitations, or prohibitions of any other section of Article VIII, or of Article XII, Sections 6 and 11, of the Constitution, provided that *moneys raised by taxation shall not be obligated or pledged for the payment of bonds or other obligations issued or guarantees made pursuant to laws enacted under this section.*"  (Emphasis added.)

(1983), 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723; *State, ex rel. Westchester Estates, Inc., v. Bacon* (1980), 61 Ohio St.2d 42, 15 O.O.3d 53, 399 N.E.2d 81, paragraph one of the syllabus; *State, ex rel. Harris, v. Rhodes* (1978), 54 Ohio St.2d 41, 42, 8 O.O.3d 36, 37, 374 N.E.2d 641, 641.

In order to meet the first prong of the foregoing test, the constitutionality of the bond issuance must be resolved. It must be determined whether the assessments are fees or taxes. Only if the assessments are fees is the Treasurer under a clear legal duty to establish the separate account and to disburse fees from the Assurance Fund. The third prong is clearly satisfied. It is without question that the relators have no other remedy available, because the Treasurer bases her refusal to act on the unconstitutionality of the legislation, and relators have no remedy for that refusal to act other than a mandamus action.

Section 4, Article VIII of the Ohio Constitution, which prohibits the state from giving or loaning its credit to any individual association or corporation in any way, standing alone, would necessitate holding the bond issuance unconstitutional. See *State, ex rel. Saxbe, v. Brand* (1964), 176 Ohio St. 44, 26 O.O.2d 309, 197 N.E.2d 328. However, in 1965 the voters of Ohio approved Section 13, Article VIII, which allows the state to participate in some project financing in limited circumstances.[3] Although Section 13 was amended in 1974, it retained the requirement that " * * * moneys raised by taxation shall not be obligated or pledged for the payment of bonds or other obligations * * *."

Running throughout Article VIII of the Ohio Constitution is a concern about placing public tax dollars at risk to aid private enterprise. See *Walker v. Cincinnati* (1871), 21 Ohio St. 14, 53–56. The policy reasons behind Article VIII's limitations on state bond issuance are called most strongly into play when state tax dollars are clearly placed at risk in what may be unwise investments. Of critical importance to the decision in the case at bar is that no moneys other than those in the Assurance Fund are actually at risk. The statutory scheme is narrowly drawn to ensure that the bonds are not supported by the full faith and credit of the state. R.C. 3737.944 explicitly provides that a statement that the bonds are not debts of the state must be placed on the face of the bonds, which are "payable solely from revenues and funds pledged for their payment." Thus, the bondholders bear the risk of the Assurance Fund's inability to meet its obligations. The holders "have no right to have taxes levied by the general assembly or the taxing authority of

---

3. Section 13 was amended in 1974 by the voters of Ohio, resulting in its present form. That amendment does not suggest that the assessments are taxes, despite respondent's contention to the contrary.

any political subdivision of the state for the payment of the principal thereof or interest thereon. * * *" *Id.*

Both relators and respondent have called this court's attention to numerous cases which determined that certain assessments either are or are not taxes. Many of those cases that consider whether a specific charge is a tax have arisen when a government's assessment is challenged by the taxpayer as being an unconstitutional tax. But in the case at bar, relators are arguing that a government-imposed exaction is not a tax. This signals that most of the cited cases are inapposite, and would not be strong precedent in deciding the case at bar. Different values and goals are implicated here.

For example, relators cite *Cincinnati v. Roettinger, supra,* as establishing a test for what is a tax. Relators suggest that the test should be whether the assessment generates excess funds which are to be placed into the General Fund. While that may be an appropriate test in some cases, it is not well suited for the resolution of this controversy. Determining whether an assessment is a fee or a tax must be done on a case-by-case basis dependent upon the facts and circumstances surrounding each assessment.

Relators liken the Assurance Fund program to insurance, in that it involves the *quid pro quo* of a service in return for a fee. Respondent argues that the Assurance Fund is not a type of insurance, but more closely resembles enforcement by the state of its taxing power.[4] To this end, respondent cites *State, ex rel. Youngstown Sheet & Tube Co., v. Leach* (1962), 173 Ohio St. 397, 20 O.O.2d 33, 183 N.E.2d 369, which held that employer contributions to the Unemployment Compensation Fund are taxes, and *State, ex rel. Shkurti, v. Withrow* (1987), 32 Ohio St.3d 424, 428, 513 N.E.2d 1332, 1336, fn. 4, which cited that holding. The Treasurer further contends that because the Assurance Fund program provides a direct benefit to the public, it is necessarily a tax and not a type of insurance program. While it is true that the program does benefit the public by maintaining a clean environment and compensating individuals for damages caused by leaking USTs, a public benefit can be found in any legislation enacted pursuant to Section 13, Article VIII, Ohio Constitution, which by definition must be for a public purpose. Hence this cannot be a valid test in all cases when determining whether an assessment is a tax or a fee. We can see no reason to hold that an exaction is a tax simply because the public is benefited.

---

4. Respondent is correct to an extent when she argues that the Assurance Fund plan has some attributes not normally found in an insurance program. In particular, payment of the assessments by UST owners and operators is mandatory. R.C. 3737.91(B). The fact that the statutory plan does not exactly resemble a traditional insurance program, alone, does not require a finding that the assessments are taxes.

Likewise, while it is true that the Assurance Fund resembles an insurance program, that inquiry alone is not dispositive on the issue of whether the assessments are taxes. These assessments are sufficiently different from those involved in any of the cases cited by either party that no precedent is strongly persuasive. For example, the *Shkurti* court's statement that employer contributions to the Unemployment Compensation Fund are taxes does not require us to hold that the contributions at issue here are also taxes. That case, which declared a proposed bond issuance unconstitutional, did not involve Section 13, Article VIII, but instead concerned a violation of Sections 1 and 3 of Article VIII. The tax issue was not a factor in the court's analysis.

*State, ex rel. Gordon, v. Rhodes* (1952), 158 Ohio St. 129, 48 O.O. 64, 107 N.E.2d 206, cited by relators, is another example of a case that decided whether a particular exaction is or is not a tax. That case held that revenues derived by a municipality from on-street parking meters are not taxes if the excess moneys are used for purposes related to parking. While the case may offer guidelines for what is a tax in some circumstances, the application of Article VIII of the Ohio Constitution was never at issue. We fail to see a significant relationship between that case and the case at bar that would strongly affect our decision here.

In evaluating the constitutionality of any enactment of the legislature, we initially must recognize the presumption of validity which attaches to all legislation. *State, ex rel. Dickman, v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. Nevertheless, this court has a duty in the appropriate case to declare that an enactment is beyond the authority of the legislature. *State, ex rel. Shkurti, v. Withrow, supra,* 32 Ohio St.3d at 429, 513 N.E.2d at 1337; *Cincinnati, Wilmington & Zanesville RR. Co. v. Clinton Cty. Commrs.* (1852), 1 Ohio St. 77, 81–86.

Respondent contends that the assessments are so clearly taxes that this court must declare the statute authorizing the bond issuance unconstitutional. We recognize that simply labeling an assessment a fee does not preclude constitutional inquiry by this court. While there is no single dominant factor that mandates finding that the assessments are fees, a number of pertinent facts, taken in the aggregate, are persuasive. These are regulatory measures, enacted to deal with the environmental problems caused by leaking USTs. The owners and operators of USTs are strictly liable to take corrective action and pay damages. R.C. 3737.89. These assessments are never placed in the General Fund,[5] R.C. 3737.91(A), and they are to be used only for narrow

---

5. Of course, if these assessments were actually taxes, the simple act by the legislature of placing them in a segregated fund would not transform them into fees. We must examine the

and specific purposes, all directly related to UST problems. While the Assurance Fund plan does not possess all the attributes of an insurance program, it sufficiently resembles one in that a form of protection in return for a fee appears to exist.

Our conclusion is further supported by the way the statutory plan operates. Once a year the board is required to determine the amount of the assessment to be made. If the unobligated balance in the Assurance Fund exceeds a specific dollar amount ($30 million) at the time of the determination, no UST owners are required to pay the assessment for that year. R.C. 3737.91(B). And if the Assurance Fund level falls below a specific amount ($15 million), the board has the authority to charge a supplemental assessment from each UST owner and operator. R.C. 3737.91(C). Thus, the assessment appears to function more as a fee than as a tax, because a specific charge in return for a service is involved.

This examination of the relevant factual circumstances leads to the conclusion that these assessments are not the type of "moneys raised by taxation" that are prohibited from being "obligated or pledged for the payment of bonds" by Section 13, Article VIII of the Ohio Constitution. Thus, we hold that these assessments are not taxes for purposes of that section. We grant the writ and direct the Treasurer to take the actions requested of her.

Our holding is narrow and confined to the facts of this case. It is not possible to come up with a single test that will correctly distinguish a tax from a fee in all situations where the words "tax" and "fee" arise. What is a tax for one inquiry is not necessarily a tax under other circumstances. As in *State, ex rel. Duerk, v. Donahey* (1981), 67 Ohio St.2d 216, 21 O.O.3d 135, 423 N.E.2d 429, respondent has not overcome the presumption of constitutionality of a legislative enactment. Because relators have shown a sufficiently clear legal right to the relief prayed for, the writ of mandamus is granted.

*Writ allowed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

---

substance of the assessments and not merely their form. See *Shkurti, supra,* 32 Ohio St.3d at 428, 513 N.E.2d at 1336.