DIEHL, INC., APPELLANT, *v.* OHIO DEPARTMENT OF AGRICULTURE, APPELLEE.

## [Cite as *Diehl, Inc. v. Ohio Dept. of Agriculture,*
## 102 Ohio St.3d 50, 2004-Ohio-1870.]

(No. 2002–1968—Submitted November 4, 2003—Decided April 28, 2004.)

———————

FRANCIS E. SWEENEY, SR., J.

{¶ 1} Plaintiff-appellant, Diehl, Inc., is a milk processor licensed by defendant-appellee, the Ohio Department of Agriculture ("ODA"), with its principal place of business in Defiance, Ohio. Diehl purchases raw milk from milk producers to manufacture evaporated-milk products. It purchases approximately 50 to 60 percent of the milk it uses from out-of-state producers.

{¶ 2} Beginning in September 1998, the ODA's Milk Sanitation Board required milk processors to pay monthly fees, as permitted by R.C. 917.031. From September 1998 until February 1999, the ODA invoiced Diehl for monthly fees based on the total amount of milk Diehl had received. However, instead of paying the invoiced amounts, Diehl recalculated and paid adjusted fees based only on the amount of milk it had purchased from Ohio producers. Due to Diehl's refusal to pay the assessed amounts, the ODA brought proceedings to revoke Diehl's license. After a hearing, Diehl's license was revoked. The parties agreed to stay the revocation and place the fees in escrow until a final determination was reached.

{¶ 3} Diehl appealed from the order revoking its license to the Defiance County Court of Common Pleas, arguing that the fees imposed on imported milk violated the Commerce Clause of the United States Constitution, Clause 3, Section 8, Article I. The common pleas court found "no justification to shift the cost of [inspecting Ohio dairy farms] to out of state producers" and, therefore, determined that the fees imposed an unconstitutional burden on interstate commerce. The court reversed the order revoking Diehl's license.

{¶ 4} The court of appeals reversed the trial court's judgment. The appellate court found that the fee did not violate the Commerce Clause, because it neither created a prohibited discriminatory effect nor imposed a burden clearly excessive in light of the local benefit. The cause is before this court upon acceptance of a discretionary appeal.

{¶ 5} The issue is whether the ODA fee imposed upon imported milk processed by Ohio processing plants violates the Commerce Clause of the United States Constitution.[1] We find that it does not and affirm the court of appeals' judgment.

{¶ 6} In 1997, the General Assembly restructured the dairy industry's regulatory framework and modified the funding methodology for that framework. See R.C. Chapter 917; Am.Sub.S.B. No. 87, 147 Ohio Laws, Part IV, 7278–7295. The Dairy Division of the ODA was formed to regulate the dairy industry and to protect Ohio consumers from adulterated dairy products. Under the regulatory scheme, the operation of the Dairy Division is funded in part by fees assessed against dairy-industry participants. R.C. 917.031.

{¶ 7} Under this new framework, the General Assembly created a new Milk Sanitation Board, which it charged with setting the fees. R.C. 917.03 and 917.031(C). The collected fees are sent to the State Treasurer, who places the moneys in a segregated Dairy Industry Fund. R.C. 917.07. These funds are then used to operate and pay expenses of the Dairy Division of the ODA. R.C. 917.07.

{¶ 8} In early 1998, the board decided to assess the following fees: $5 monthly fee for processors operating a receiving station; $25 monthly fee for processors operating a transfer station; $15 per tank or conveyance for haulers; and an apportioned monthly fee for processors operating milk plants. Each processor's monthly fee is based on the number of pounds of milk it received during the month, including out-of-state milk.

---

1. There is some discussion in the briefs whether the assessment is a fee or a tax. *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow* (1991), 62 Ohio St.3d 111, 579 N.E.2d 705, answers the question. In *Withrow,* we stated, "A fee is a charge imposed by a government in return for a service it provides; a fee is not a tax." Id. at 113, 579 N.E.2d 705. Since the assessment is collected to fund the inspections, we find that it is a fee.

{¶ 9} Diehl argues that the fees structure violates the Commerce Clause by shifting part of the cost of inspecting Ohio producers (who do not pay an inspection fee) to the cost of processing milk that was produced out of state. Diehl argues that this gives Ohio producers an advantage over out-of-state producers because the out-of-state producers pay for their state's inspections and reflect those costs in their price. However, the ODA contends that the fee is a regulatory fee because it is collected to fund the Dairy Division of the ODA. And thus, by assessing a regulatory fee on milk processors, appellee is exercising its police power to ensure the quality of milk.

{¶ 10} The Commerce Clause provides:

{¶ 11} "The Congress shall have power * * * [t]o regulate Commerce * * * among the several States * * *." Clause 3, Section 8, Article I, United States Constitution. The Commerce Clause contains two parts. First, there is the express grant of power to Congress to regulate interstate commerce. Lawrence, Toward a More Coherent Dormant Commerce Clause: A Proposed Unitary Framework (1998), 21 Harv.J.L. & Pub. Policy 395, 407. Second, there is the implied limitation on states from regulating matters that interfere with interstate commerce. Id. This limitation is referred to as the negative or dormant Commerce Clause. Id.

{¶ 12} "The underlying purpose of the Commerce Clause is to facilitate free trade between the states." Dayton Power & Light Co. v. Lindley (1979), 58 Ohio St.2d 465, 467, 12 O.O.3d 387, 391 N.E.2d 716. As the United States Supreme Court has stated, the Constitution "was framed upon the theory that the peoples of the several states must sink or swim together, and that in the long run prosperity and salvation are in union and not division." Baldwin v. G.A.F. Seelig, Inc. (1935), 294 U.S. 511, 523, 55 S.Ct. 497, 79 L.Ed. 1032.

{¶ 13} However, states have broad police powers to regulate health, safety, and general welfare within their borders. Therefore, problems arise when states enact protectionist regulations (i.e., regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors) or legitimate nondiscriminatory regulations that interfere with interstate commerce. Fox, State Benefits under the Pike Balancing Test of the Dormant Commerce Clause: Putative or Actual? (2003), 1 Ave Maria L.Rev. 175. To address these problems, courts have developed dormant-Commerce-Clause principles to help them determine whether to uphold or strike down state regulations. Petragnani, The Dormant Commerce Clause: On Its Last Leg (1994), 57 Alb.L.Rev. 1215. Protectionist regulations are consistently struck down. The same cannot be said for nondiscriminatory regulations that affect interstate commerce. Id. These regulations are subject to a balancing test:

{¶ 14} "Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.* (1970), 397 U.S. 137, 142, 90 S.Ct. 844, 25 L.Ed.2d 174.

{¶ 15} Diehl concedes that the fee does not explicitly discriminate against out-of-state interests. Therefore, we analyze the fee in question by applying the *Pike* test.

{¶ 16} Applying this test, we find that the ODA's fee schedule does not violate the dormant Commerce Clause. First, by requiring Ohio milk processors to pay an assessment calculated on the total amount of raw milk they receive without regard to the state of origin, the fee is imposed in an evenhanded manner that does not favor Ohio milk over out-of-state milk. Second, there is a legitimate local public interest in that the fee is collected to pay the expenses of the Dairy Division. See R.C. 917.07. The ODA must ensure the safety and wholesomeness of milk sold in Ohio. To accomplish this goal, it inspects milk handlers, including producers and processors. The fee is collected to pay for these inspections. Additionally, the effects on interstate commerce, if any, are incidental. There is no evidence that the fee adversely affects sales of out-of-state milk to Ohio processors. Therefore, the fee is not unduly burdensome.

{¶ 17} Finally, while Diehl relies upon *West Lynn Creamery, Inc. v. Healy* (1994), 512 U.S. 186, 114 S.Ct. 2205, 129 L.Ed.2d 157, we find that this case offers no support for its position. In *West Lynn Creamery,* a Massachusetts pricing order imposed a uniform fee on all milk sold by dealers to Massachusetts retailers. Although most of the milk was produced out of state, the entire assessment was distributed to Massachusetts dairy farmers. The United States Supreme Court held that the pricing order unconstitutionally discriminated against interstate commerce. It reasoned that the pricing order's "avowed purpose and its undisputed effect are to enable higher cost Massachusetts dairy farmers to compete with lower cost dairy farmers in other States. The 'premium payments' are effectively a tax which makes milk produced out of State more expensive. Although the tax also applies to milk produced in Massachusetts, its effect on Massachusetts producers is entirely * * * offset by the subsidy provided exclusively to Massachusetts dairy farmers. * * * The pricing order thus allows Massachusetts dairy farmers who produce at higher cost to sell at or below the price charged by lower cost out-of-state producers." Id., 512 U.S. at 194–195, 114 S.Ct. 2205, 129 L.Ed.2d 157.

{¶ 18} In *West Lynn Creamery,* the fee was returned to Massachusetts dairy farmers to subsidize them; thus, the fee was used to favor in-state dairy farmers over their out-of-state competitors. Here, the Ohio fees are not a subsidy paid

directly to the farmers but are instead collected to fund the Dairy Division. Thus, unlike the Massachusetts dairy farmers, Ohio farmers are not given an unfair advantage over out-of-state farmers. Moreover, the purpose behind the Ohio fee was different from Massachusetts' pricing order; in Ohio, the purpose was to ensure the quality of the milk not to bolster the competitiveness of Ohio's milk producers. Thus, *West Lynn Creamery* is clearly distinguishable.

{¶ 19} In conclusion, we find that the fee is not an unconstitutional burden on interstate commerce. The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Benjamin F. Yale & Associates Co., L.P.A., Benjamin F. Yale, Kristine H. Reed and Ryan K. Miltner, for appellant.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, and Robert C. Maier, Assistant Solicitor, for appellee.