[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Northeast Ohio Regional Sewer Dist. v. Bath Twp.*, Slip Opinion No. 2015-Ohio-3705.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3705

NORTHEAST OHIO REGIONAL SEWER DISTRICT, APPELLANT, *v*. BATH TOWNSHIP ET AL.; THE CITY OF BEACHWOOD ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Northeast Ohio Regional Sewer Dist. v. Bath Twp.*, Slip Opinion No. 2015-Ohio-3705.]

*Water and sewer districts—R.C. Chapter 6119—Sewer district has authority to establish regional stormwater-management program and to charge fees to implement stormwater-management program.*

(No. 2013-1770—Submitted September 9, 2014—Decided September 15, 2015.)

APPEAL from the Court of Appeals for Cuyahoga County, Nos. 98728 and 98729, 2013-Ohio-4186.

_____

PFEIFER, J.

{¶ 1} Appellant, the Northeast Ohio Regional Sewer District (the "Sewer District"), seeks to implement a regional stormwater-management program. Appellees, political subdivisions and landowners within the Sewer District, argue

and the court of appeals concluded that the Sewer District is not authorized to establish a stormwater-management program. We disagree and reverse the judgment of the court of appeals.

**BACKGROUND**

{¶ 2} The Sewer District, a political subdivision of the state of Ohio, was formed in 1972 and includes as member communities all or parts of over 60 cities, villages, and townships in and around Cuyahoga County. In January 2010, the Sewer District adopted a plan to establish a regional stormwater-management program and a structure for fees to be charged to landowners within the Sewer District whose properties contain impervious surfaces. The Sewer District then filed an action in common pleas court against its member communities seeking a declaratory judgment that it had the authority to implement the regional stormwater-management program and to impose the fees. Some of those member communities and several intervening landowners argued that the Sewer District lacked authority to implement the program and fees under R.C. Chapter 6119 and the Sewer District's charter and that the fees were unconstitutional.

{¶ 3} In April 2011, the trial court declared, upon a motion for partial summary judgment, that the Sewer District had authority under R.C. Chapter 6119 and its charter to enact a regional stormwater-management program. The court of appeals reversed. It properly concluded that as a creature of statute, the Sewer District's authority is limited by the statutory scheme that created it. 999 N.E.2d 181, 2013-Ohio-4186, ¶ 40. The court of appeals stated that

the purpose of a regional water and sewer district is for "either or both" of the following purposes: "(A) [t]o supply water to users within or without the district"; and "(B) [t]o provide for the collection, treatment, and disposal of waste water within and without the district."

2

(Brackets sic.) *Id*. at ¶ 43, quoting R.C. 6119.01(A) and (B).

{¶ 4} The court of appeals concluded that although the statutory scheme "authorize[s] the Sewer District to collect, treat, and dispose of waste water entering the sewer system," it "does not authorize the District to implement a 'stormwater management' program." *Id*. at ¶ 43 and 46. This conclusion depends in large part upon the court's pronouncement that "[t]he term waste water necessarily means water containing waste." *Id*. at ¶ 44, citing *Reith v. McGill Smith Punshon, Inc.*, 163 Ohio App.3d 709, 2005-Ohio-4852, 840 N.E.2d 226 (1st Dist.).

{¶ 5} The trial court also concluded after a bench trial that the Sewer District is authorized by R.C. Chapter 6119 to charge fees to pay for the stormwater-management program. The court of appeals reversed, concluding that the fees were "not for the 'use or service' of a 'water resource project.' "

{¶ 6} We granted the Sewer District's discretionary appeal as to Proposition of Law No. I (asserting that the program and fees are authorized under R.C. Chapter 6119) and Proposition of Law No. II (asserting that the program and fees are authorized under the Sewer District's charter). 138 Ohio St.3d 1413, 2014-Ohio-566, 3 N.E.3d 1216.

## ANALYSIS

{¶ 7} Despite the great interests at stake, the issues in this case are exceedingly straightforward: (1) is the Sewer District's regional stormwater-management program authorized by statute and by its charter and (2) is the attendant fee structure authorized by statute and by the charter. We answer both questions in the affirmative.

*I. The regional stormwater-management program is authorized by statute and by the Sewer District's charter*

{¶ 8} There are many sound policy reasons to support or oppose the creation of the Sewer District's regional stormwater-management program and its attendant fee structure. The various party and amicus briefs are testaments to this. Although we appreciate their substantive significance, they are not germane to the legal issues before us.

{¶ 9} The parties do not dispute that the Sewer District is a valid creature of statute, authorized by R.C. Chapter 6119. The Sewer District's ability to create a regional stormwater-management program must, then, have its basis in the statutory scheme, which provides only two valid purposes for a regional water or sewer district. The district must "supply water," which the sewer district does not, or it must "provide for the collection, treatment, and disposal of waste water." R.C. 6119.01.

{¶ 10} R.C. 6119.011(K) defines "waste water" as "any storm water and any water containing sewage or industrial waste or other pollutants or contaminants derived from the prior use of the water." Despite its plain language, the parties' interpretations of this definition are radically different.

{¶ 11} Appellees argue, and the court of appeals concluded, that "[t]he term waste water necessarily means water containing waste." 2013-Ohio-4186, 999 N.E.2d 181, ¶ 44. Appellees contend that the participial phrase "containing sewage or industrial waste or other pollutants or contaminants derived from the prior use of the water" modifies the noun "any storm water" as well as the noun "any water," which would mean that stormwater is only "waste water" when it is combined with sewage or pollutants.

{¶ 12} The definition provided in the statute is uncomplicated. *See Youngstown Club v. Porterfield*, 21 Ohio St.2d 83, 86, 255 N.E.2d 262 (1970) ("it is customary to give words their plain ordinary meaning unless the legislative

body has clearly expressed a contrary intention"). In our view, the statute plainly indicates that "waste water" comes in two forms. One is "any storm water." The other is "any water containing sewage or industrial waste or other pollutants or contaminants derived from the prior use of the water." There is no other plausible reading of the definition.

{¶ 13} The definition sought by appellees renders the words "any storm water and" meaningless. But the words "any storm water and" are in the statute, and it is well known that our duty is to "give effect to the words used, not to delete words used or to insert words not used." *Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969); *see also State ex rel. Carmean v. Hardin Cty. Bd. of Edn.*, 170 Ohio St. 415, 422, 165 N.E.2d 918 (1960) ("It is axiomatic in statutory construction that words are not inserted into an act without some purpose").

{¶ 14} We conclude that the term "any storm water" was not included in the statute to be mere surplusage. The Sewer District has the authority to collect, treat, and dispose of "waste water." We hold that R.C. 6119.011(K) identifies two types of "waste water," one of which is "any storm water." Accordingly, we conclude that the regional stormwater-management program falls within the statutory authority of the Sewer District.

{¶ 15} The charter creating the Sewer District states, "The purpose of the District shall be the establishment of a total waste water control system for the collection, treatment and disposal of waste water within and without the District * * *." *In re Establishment of Cleveland Regional Sewer Dist.*, Cuyahoga C.P. No. SD 69411 (June 15, 1972), Exhibit A, ¶ 4. This authority includes "overall control of all waste water collection systems in the area." *Id.* Given the statutory definition of "waste water," as discussed above, it is clear that the charter governing the Sewer District authorizes it to implement a regional stormwater-management program. Moreover, the charter also states, "The

District will plan, finance, construct, operate and control waste water treatment and disposal facilities, major interceptor sewers, all sewer regulator systems and devices, weirs, retaining basins, storm water handling facilities, and all other water pollution control facilities of the District." *Id*. at ¶ 5(c). This charter provision specifically authorizes the Sewer District to build and operate stormwater-handling facilities.

*II. The Sewer District is authorized by statute and by its charter to assess fees to implement the regional stormwater-management program*

{¶ 16} Having determined that the Sewer District is authorized to implement a regional stormwater-management program, we must now determine whether the district has the authority to charge fees to pay for that program. R.C. 6119.09 provides that "[a] regional water and sewer district may charge, alter, and collect rentals or other charges * * * for the use or services of any water resource project or any benefit conferred thereby." R.C. 6119.011(G) defines a "water resource project" as

> any waste water facility or water management facility acquired, constructed, or operated by or leased to a regional water and sewer district or to be acquired, constructed, or operated by or leased to a regional water and sewer district under this chapter * * *.

{¶ 17} "Waste water facilities" means

> facilities for the purpose of treating, neutralizing, disposing of, stabilizing, cooling, segregating, or holding waste water, including, without limiting the generality of the foregoing, * * * facilities for the temporary or permanent impoundment of waste water, both surface and underground, and storm and sanitary sewers and other

systems, whether on the surface or underground, designed to transport waste water * * *.

R.C. 6119.011(L).

{¶ 18} "Water management facilities" means

facilities for the purpose of the development, use, and protection of water resources, including, without limiting the generality of the foregoing, facilities for water supply, facilities for stream flow improvement, dams, reservoirs, and other impoundments, * * * stream monitoring systems, facilities for the stabilization of stream and river banks, and facilities for the treatment of streams and rivers * * *.

R.C. 6119.011(M).

{¶ 19} Appellees argue that the Sewer District cannot charge the fees permitted for a water resource project because the Sewer District does not own or operate the various parts of the current stormwater-management system. *See* R.C. 6119.011(G). But the statutory definition of "water resource project" includes a facility that is "to be acquired, constructed, or operated" by the Sewer District. *Id*. The Sewer District may therefore charge fees for this purpose under R.C. 6119.09.

{¶ 20} It is impossible to say at this time that the Sewer District will not use the fees to acquire, construct, or operate a facility that will be part of the regional stormwater-management system that it is authorized to implement. It might not, and if it does not, appellees will be within their rights to challenge the

Sewer District's collection of fees that did not go toward the use for which they were statutorily authorized. But today is not that day.

{¶ 21} As stated above, the Sewer District's charter instructs it to, among other things, "finance * * * waste water treatment and disposal facilities [and] storm water handling facilities * * *." *In re Establishment of Cleveland Regional Sewer Dist.*, Cuyahoga C.P. No. SD 69411, Exhibit A, ¶ 5(c)(1). The charter provides that "[a]ny projects not financed through the Ohio Water Development Authority would be financed in such a manner as may be deemed appropriate by the Board of Trustees." *Id.* at ¶ 5(e)(3). We conclude that this broad language encompasses the assessing of fees to pay for a stormwater-management system and that the fees are therefore authorized by the charter.

{¶ 22} Because we conclude that the Sewer District has authority to implement a regional stormwater-management program and to charge fees for that program, we reverse the judgment of the court of appeals.

Judgment reversed.

O'CONNOR, C.J., and LANZINGER and O'NEILL, JJ., concur.

FRENCH, J., concurs in part and dissents in part.

O'DONNELL and KENNEDY, JJ., dissent.

_____

**FRENCH, J., concurring in part and dissenting in part.**

{¶ 23} I agree with the majority that appellant, the Northeast Ohio Regional Sewer District (the "Sewer District"), has authority under both R.C. Chapter 6119 and its charter to implement a regional stormwater-management program, but I respectfully disagree with the majority's conclusion that the Sewer District has statutory authority to finance that program by presently assessing the stormwater fees that are set out in Title V of its Code of Regulations, which implements the stormwater-management program. Accordingly, I concur in part and dissent in part.

{¶ 24} Both the majority opinion and Justice Kennedy's dissent recognize that the Sewer District's statutory authority over stormwater hinges, in part, upon the meaning of the term "waste water" in R.C. 6119.01(B) and, specifically, upon whether that term includes uncontaminated stormwater. I agree with the majority opinion that R.C. 6119.011(K) is unambiguous. It defines "waste water" as encompassing two types of water: (1) "any storm water" and (2) "any water containing sewage or industrial waste or other pollutants or contaminants derived from the prior use of the water."[1] Under R.C. 6119.01(B), the Sewer District has authority to collect, treat, and dispose of stormwater, whether or not it contains sewage, industrial waste or other pollutants.

{¶ 25} Other provisions in R.C. Chapter 6119 reinforce the Sewer District's statutory authority over stormwater. A regional water and sewer district's broad authority includes the authority to acquire, construct, improve, maintain, repair, and operate water-resource projects, including waste-water facilities and water-management facilities. R.C. 6119.011(G) and (S); R.C. 6119.06(G). Both "waste water facilities" and "water management facilities" encompass facilities dealing with stormwater. R.C. 6119.011(L) and (M). Additionally, R.C. 6119.19 states that "the board of trustees of a regional water and sewer district may provide a system of sanitary and/*or storm water sewerage*, herein referred to only as sewerage, for any part of the area included within the district." (Emphasis added.) Based upon these provisions and the statutory definition of "waste water," which encompasses stormwater, I agree with the

---

[1] Ohio is not alone in including stormwater within its definition of wastewater. *See, e.g.*, Ky.Rev.Stat.Ann. 65.8903(4) (" 'Wastewater' includes stormwater"); N.J.Stat.Ann. 58:27-3(e) (" 'Wastewater' means residential, commercial, industrial, or agricultural liquid waste, sewerage, storm water runoff, or any combination thereof * * *"); Wis.Adm.Code SPS 381.01(276) (" 'Wastewater' means clear water, storm water, domestic wastewater, industrial wastewater, sewage or any combination of these").

majority's conclusion that the Sewer District has the authority to manage stormwater.

{¶ 26} I likewise agree with the majority that the Sewer District's charter authorizes it to implement a regional stormwater-management program. The charter tracks the language of R.C. 6119.01(B) and states the Sewer District's purpose as "the establishment of a total wastewater control system for the collection, treatment and disposal of wastewater within and without the District." *In re Establishment of Cleveland Regional Sewer Dist.*, Cuyahoga C.P. No. SD 69411 (May 25, 1979), Exhibit A, ¶ 4. In light of the inclusion of stormwater within the preexisting statutory definition of "waste water," the charter authorizes the Sewer District to establish a stormwater-management system, consistent with R.C. Chapter 6119.

{¶ 27} Water pollution, stemming from "[t]he increase in the amount of wastewater in the Metropolitan Cleveland area resulting from the increase in population and the expansion of industry in the many political subdivisions outside of the City of Cleveland," was a driving force behind the creation of the Sewer District. *Id.* at ¶ 3. The charter authorizes the Sewer District to "plan, finance, construct, operate and control wastewater treatment and disposal facilities, major interceptor sewers, all sewer regulator systems and devices, weirs, retaining basins, storm water handling facilities, and all other water pollution control facilities of the District." *Id.* at ¶ 5(c)(1). But the charter also expressly authorizes the Sewer District to undertake stormwater-control measures. Paragraph 5(m), which governs the Sewer District's authority with respect to "Local Sewerage Collection Facilities and Systems," states that "[t]he District shall have authority pursuant to Chapter 6119 of the Ohio Revised Code to plan, finance, construct, maintain, operate, and regulate local sewerage collection facilities and systems within the District, *including both storm and sanitary sewer systems*." (Emphasis added.) And paragraph 5(m)(3) specifically directs the

10

Sewer District to "develop a detailed integrated capital improvement plan for regional management of wastewater collection and storm drainage designed to identify a capital improvement program for the solution of all intercommunity drainage problems (both storm and sanitary) in the District."

{¶ 28} Appellees, political subdivisions and property owners within the Sewer District, argue that Title V of the Sewer District's Code of Regulations, which sets out the regional stormwater-management program, conflicts with the charter's provision that local communities retain authority and responsibility for maintaining and operating their local sewerage collection systems absent a written agreement placing that responsibility on the Sewer District. But Title V does not provide for the Sewer District's ownership of or responsibility for sewerage collection facilities and systems owned or operated by the member communities, and the Sewer District asserts that it does not intend to interfere with the member communities' local systems.

{¶ 29} Title V distinguishes between local stormwater systems and the regional stormwater system. "Regional Stormwater System" means "[t]he entire system of watercourses, stormwater conveyance structures, and Stormwater Control Measures in the District's service area that are owned and/or operated by the District or over which the District has right of use for the management of stormwater, including both naturally occurring and constructed facilities." Northeast Ohio Regional Sewer Dist. Code of Regs., Section 5.0218. "Local Stormwater System," on the other hand, includes watercourses, stormwater-conveyance structures or stormwater-control measures "owned and/or operated by a private entity or a unit of local government other than the District" and "not designated as part of the Regional Stormwater System." *Id.*, Section 5.0212. So, the regional stormwater system does not include watercourses, conveyance structures or stormwater-control measures owned or operated by the local communities absent agreement between the local communities and the Sewer

District. By limiting the reach of the regional stormwater system, Title V does not conflict with the Sewer District's charter, and I agree with the majority that the charter authorizes the Sewer District to build and operate a regional stormwater-management system.

{¶ 30} Despite my agreement with the majority's determination that the Sewer District has authority to manage uncontaminated stormwater, I disagree with the majority's conclusion that R.C. 6119.09 authorizes the stormwater fees set out in Title V. Appellees argue that the Sewer District cannot impose its stormwater fees for two reasons: (1) because R.C. Chapter 6119 does not authorize the fees and (2) because the fees amount to an unlawful tax.

{¶ 31} In her dissent, Justice Kennedy adopts appellees' second argument—that the charges amount to an unlawful tax. But I agree with the Sewer District's assertion that that issue is not properly before us. The Sewer District asked this court to adopt a proposition of law stating that stormwater-management charges based upon the amount of impervious surface a parcel contains—like the stormwater fees here—do not constitute an illegal tax. This court, however, declined jurisdiction over that proposition of law. *Northeast Ohio Regional Sewer Dist. v. Bath Twp.*, 138 Ohio St.3d 1413, 2014-Ohio-566, 3 N.E.3d 1216. Having declined jurisdiction over that proposition of law, the question whether the stormwater fees are an unlawful tax is not before the court.

{¶ 32} In my view, it is appellees' other argument—regarding statutory authority—that is persuasive. The majority reasons that because a "water resource project" includes a facility to be acquired, constructed or operated, the Sewer District may charge fees for that purpose under R.C. 6119.09. I respectfully disagree.

{¶ 33} R.C. 6119.09 authorizes a regional water and sewer district to

12

> "charge, alter, and collect rentals or other charges * * * for the *use or services* of any water resource project or any *benefit* conferred thereby and contract * * * with one or more persons, one or more political subdivisions, or any combination thereof, desiring the use or services thereof, and fix the terms, conditions, rentals, or other charges * * * for such use or services."

(Emphasis added.) *See also* R.C. 6119.06(W). The Sewer District contends that its stormwater fees represent charges for the use, services or benefits of a water-resource project.

{¶ 34} Although R.C. 6119.011(G) defines "water resource project" to include a project "to be acquired, constructed, or operated by or leased to a regional water and sewer district," the district may charge only "for the use or services of" or "any benefit conferred" by a water-resource project. R.C. 6119.09. R.C. 6119.09 contemplates uses or services that may be contracted for. The question, therefore, resolves to whether a water-resource project that will be acquired, constructed or operated *in the future* affords uses, services or benefits *in the present*, so as to authorize charges under R.C. 6119.09—a question the majority does not address.

{¶ 35} The Eighth District concluded that the Sewer District "improperly employed R.C. 6119.09 to generate revenues for the costs of its" regional stormwater-management program because the stormwater fees are "unrelated to any use or services afforded to a property owner by a 'water resource project.'" 2013-Ohio-4186, 999 N.E.2d 181, ¶ 53, 56. Appellees likewise contend that the Sewer District may not impose stormwater fees for a water-resource project that the Sewer District has not yet acquired, constructed or operated, because until it has done so, there is no use, service or benefit for which to charge.

**{¶ 36}** The Sewer District directs this court to the trial court's factual findings regarding the uses and services the regional stormwater-management program provides. The trial court found that property owners within the Sewer District passively " 'use' the unmanaged Regional Stormwater System as rainfall creates runoff from each parcel." The trial court also found that the Sewer District provides the "service of effective transportation of stormwater," resulting in decreased flooding and erosion. Finally, the court stated that the regional stormwater-management system will provide benefits, including improvements in water quality and wildlife habitats and the reduction of future stormwater-management costs. But those findings depend upon the Sewer District acquiring, constructing, and operating a water-resource project. Whether property owners would benefit in the future from the system the Sewer District intends to create and operate sidesteps the relevant issue: whether the Sewer District currently offers uses or services relating to the stormwater-management system for which it may charge.

**{¶ 37}** Nothing in R.C. 6119.09 suggests that the Sewer District may presently impose a fee for uses or services it will be able to provide only in the future. The statute requires current usage, service or benefits to justify the collection of stormwater fees. Until the Sewer District acquires, constructs or begins to operate a water-resource project relating to regional stormwater management, it has no use, service or benefit to provide in exchange for the stormwater fees it seeks to extract from property owners.

**{¶ 38}** Even so, the Sewer District is not without recourse. A regional water and sewer district may levy and collect taxes and special assessments and may issue revenue bonds. R.C. 6119.06(I) and (J); R.C. 6119.12; R.C. 6119.18; R.C. 6119.42. It may receive and accept grants from federal and state agencies for or in aid of the construction of water-resource projects. R.C. 6119.06(U). And it may enter into cooperative agreements with one or more political

14

subdivisions to fund the acquisition or construction of a water-resource project. R.C. 6119.09.

{¶ 39} Because I conclude that R.C. 6119.09 does not authorize the Sewer District to impose stormwater fees for the use and service of a water-resource project to be acquired, constructed or operated by the Sewer District in the future, I dissent from the majority's determination that the Sewer District is presently authorized to impose the stormwater fees set out in Title V of its Code of Regulations. In all other respects, I concur.

_____

**KENNEDY, J., dissenting.**

{¶ 40} Respectfully, I dissent. I would hold that the Northeast Ohio Regional Sewer District (the "Sewer District") lacks authority to manage stormwater as proposed in the Sewer District's Stormwater Management Code ("SMC") or to charge a fee to manage stormwater.

*R.C. Chapter 6119*

{¶ 41} R.C. Chapter 6119 addresses the creation and authority of regional sewer districts. As creatures of statute, sewer districts "have no more authority than that conferred upon them by the statute, or what is clearly implied therefrom." *See Hall v. Lakeview Local School Dist. Bd. of Edn.*, 63 Ohio St.3d 380, 383, 588 N.E.2d 785 (1992). "Implied powers are those that are incidental or ancillary to an expressly granted power; the express grant of power must be clear, and any doubt as to the extent of the grant must be resolved against it." *In re Guardianship of Spangler*, 126 Ohio St.3d 339, 2010-Ohio-2471, 933 N.E.2d 1067, ¶ 17.

{¶ 42} The Sewer District is authorized "[t]o provide for the collection, treatment, and disposal of waste water within and without the district" pursuant to R.C. 6119.01. " 'Waste water' means any storm water and any water containing sewage or industrial waste or other pollutants or contaminants derived from the

prior use of the water." R.C. 6119.011(K). I agree with appellees and the court of appeals that "waste water" necessarily means water containing waste.

{¶ 43} The majority holds that R.C. 6119.011(K) authorizes the District to manage two types of water—stormwater and water that is polluted or contaminated. I disagree. In my view, the definition of "waste water" is water that "contain[s] sewage or industrial waste or other pollutants or contaminants." R.C. 6119.011(K). This conclusion is supported by the purpose of the Sewer District, which is "to provide for collection, *treatment*, and disposal of waste water." (Emphasis added.) R.C. 6119.01. Therefore, because the Sewer District is only authorized to treat water that contains waste, it has no authority to treat stormwater runoff, which the SMC defines as stormwater "that flows into ditches, water courses, storm sewers, or other concentrated flow patterns during and following precipitation, including rain runoff, snowmelt runoff, and surface runoff."

*The SMC*

{¶ 44} The SMC proposes a comprehensive, broad-ranging plan to manage stormwater that is beyond the Sewer District's authority under R.C. Chapter 6119. The Sewer District found that flooding and streambank erosion are "significant threats" within the District. Consequently, the Sewer District determined that a "Regional Stormwater Management Program is necessary" to address these threats and their impacts on northeast Ohio's water resources. The regional stormwater-management program would include "[c]omprehensive management of the Regional Stormwater System," "construction and implementation of necessary Stormwater Control Measures to address current, and minimize new flooding and erosion issues affecting the Regional Stormwater System," as well as "inspection, operation, maintenance, and monitoring activities," including but not limited to clearing debris from blocked culverts,

bridge abutments, and repair of streambank erosion. The "Regional Stormwater System" is extensive and includes:

> The entire system of watercourses, stormwater conveyance structures, and Stormwater Control Measures in the District's service area that are owned and/or operated by the District or over which the District has right of use for the management of stormwater, including both naturally occurring and constructed facilities. The Regional Stormwater System shall generally include those watercourses, stormwater conveyance structures, and Stormwater Control Measures receiving drainage from three hundred (300) acres of land or more.

{¶ 45} The SMC further states that it "is applicable to activities and persons on all parcels within the Sewer District's service area." The District will charge every parcel of land within the District a stormwater fee to fund the aforementioned stormwater-control measures.

{¶ 46} Nowhere in Chapter 6119 is flooding or erosion control discussed. In large part, the SMC seeks to manage "pure" stormwater, i.e. water resulting from precipitation that is not mixed with pollutants or contaminants and that never enters the sanitary sewer system. Management of this water is beyond the scope of the Sewer District's authority, which is to collect, treat, and dispose of waste water, which is water that contains waste, i.e., pollutants or contaminants. Therefore, I would hold that the Sewer District has no statutory authority to implement the SMC.

*Stormwater "Fees"*

**{¶ 47}** Initially, I will address the concurring and dissenting opinion's assertion that the issue of whether a stormwater fee is a lawful tax is not properly before the court.

**{¶ 48}** Even though the reasons are not typically memorialized, this court may reject one or more propositions of law or an entire discretionary appeal for any number of reasons. *See Williamson v. Rubich*, 171 Ohio St. 253, 253-254, 168 N.E.2d 876 (1960), citing Oho Constitution, Article IV, Section 6 (whether questions presented to this court for appellate review "are in fact ones of public or great general interest rests within the discretion of the court"). However, I can find no authority that a rejected proposition of law creates a bar or waiver upon a party's argument when set forth in a legitimate response to an opposing party's proposition of law that has been accepted by the court. Nor can I find any authority that would preclude the court from considering and relying upon such an argument.

**{¶ 49}** The Sewer District raised three propositions of law in its discretionary appeal to this court. We accepted the Sewer District's first two propositions for review on their merits, 138 Ohio St.3d 1413, 2014-Ohio-566, 3 N.E.3d 1216, but declined to review the third proposition, which stated "Stormwater management programs, paid for through charges for stormwater management services, do not violate the Ohio or United States Constitutions. Further, such charges, when based upon the amount of impervious surface on a property, do not constitute an illegal tax."

**{¶ 50}** One of the two propositions that we accepted stated "A district formed pursuant to R.C. Chapter 6119 is authorized to manage stormwater which is not combined with sewage, and to impose a charge for that purpose. *Such a charge is one 'for the use or service of a water resource project or any benefit conferred thereby.'* " (Emphasis added.)

**{¶ 51}** In response to that proposition, appellee city of Beachwood argued in its merit brief in part that "[t]he Stormwater Fee is actually an unauthorized tax that the Sewer District is using to avoid other required R.C. Chapter 6119 revenue-generating procedures." Beachwood's argument is an apt challenge to the Sewer District's assertion that the proposed charge for stormwater management is authorized. To prevent Beachwood from making such an argument based on *our* initial declination to consider this issue would infringe upon Beachwood's ability to make arguments of its own choosing and to fully respond to the Sewer District's propositions of law that we accepted in this appeal. And unlike issues raised for the first time in a reply brief, where the opposing party has no ability to respond, Beachwood raised the unlawful tax argument in its merit brief, affording the Sewer District an opportunity to refute the argument in its reply brief. *Compare In re C.Z.*, 12th Dist. Warren Nos. CA2005-06-065, CA2005-06-066, CA2005-06-081, and CA2005-06-082, 2006-Ohio-1787, ¶ 20 (raising a new assignment of error in a reply brief precludes the opposing party from responding to that argument).

**{¶ 52}** Obviously, this court may reject any argument presented by a party, but this court's refusal to review a proposition of law should not bar an opposing party from later using the same or a similar issue raised in that proposition in a legitimate, responsive argument to an opposing party's proposition of law that is being considered by the court, nor should it prevent this court from relying upon such an argument. Under the facts of this case, I would hold that the court is justified in considering Beachwood's responsive argument that the Sewer District's proposed fee is really an unlawful tax, even though the court declined to accept the Sewer District's proposition of law on that issue for review. Having addressed this threshold issue, I will proceed to address the merits of whether the stormwater fee is an unlawful tax.

{¶ 53} A sewer district may "charge, alter, and collect rentals or other charges, including penalties for late payment, for the use or services of any water resource project or any benefit conferred thereby." R.C. 6119.09; *see also* R.C. 6119.06(W)(1). A "water resource project" is defined under R.C. 6119.011(G) as "any waste water facility or water management facility acquired, constructed, or operated by or leased to a regional water and sewer district or to be acquired, constructed, or operated by or leased to a regional water and sewer district under this chapter * * *."

{¶ 54} In this case, the Sewer District, through the SMC, seeks to impose a "stormwater fee" on parcels of land in the District to pay for the management of stormwater. The fee, which is "based upon a calculation of the amount of Impervious Surface on a parcel[,] shall be imposed on every parcel within the District's service area."

{¶ 55} In my view, this fee is actually a tax, which does not appear to have been lawfully imposed. *See* R.C. 6119.18; *see also Sanborn v. Hamilton Cty. Budget Comm.*, 142 Ohio St.3d 20, 2014-Ohio-5218, 27 N.E.3d 498, ¶ 5-7, citing Ohio Constitution, Article XII, Section 2.

{¶ 56} "It is not possible to come up with a single test that will correctly distinguish a tax from a fee in all situations * * *." *State ex rel. Petroleum Underground Storage Tank Release Comp. Bd. v. Withrow*, 62 Ohio St.3d 111, 117, 579 N.E.2d 705 (1991). Therefore, "[d]etermining whether an assessment is a fee or a tax must be done on a case-by-case basis dependent upon the facts and circumstances surrounding each assessment." *Id.* at 115.

{¶ 57} Some factors that may indicate that an assessment is a fee include: (1) the assessment is "imposed in furtherance of regulatory measures," (2) the assessment is not placed in the general fund, but is used only to fund the regulatory purpose, (3) the assessment is " 'imposed by a government in return for a service it provides,' " and (4) the assessment is discontinued when the

unobligated balance in the fund reaches a certain level. *Drees Co. v. Hamilton Twp.*, 132 Ohio St.3d 186, 2012-Ohio-2370, 970 N.E.2d 916, ¶ 16-20, citing and quoting *Withrow* at 111, 113, 116-117.

{¶ 58} In *Natl. Cable Television Assn., Inc. v. United States*, 415 U.S. 336, 340-341, 94 S.Ct. 1146, 39 L.Ed.2d 379, the court commented:

> Taxation is a legislative function [where the legislature] may act arbitrarily and disregard benefits bestowed by the Government on a taxpayer and go solely on ability to pay, based on property or income. *A fee*, however, *is incident to a voluntary act*, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or run a broadcast station. The public agency performing those services normally may exact a *fee* for a grant which, presumably, *bestows a benefit on the applicant, not shared by other members of society*.

(Emphasis added.)

{¶ 59} An example of a fee charged for a service is found in *Wyatt v. Trimble Twp. Waste Water Treatment Dist.*, 4th Dist. Athens No. 1521, 1992 WL 329386 (Nov. 3, 1992). In *Wyatt*, the Trimble Township Waste Water Treatment District charged a homeowner for the installation of a plug at the point where each premises was to be connected to an existing sanitary sewer system for the purpose of waste-water treatment. The court found that the fee was in return for a benefit conferred, i.e., treatment of the homeowner's waste water. *Id*. at *3.

{¶ 60} In *Bolt v. Lansing*, 459 Mich. 152, 587 N.W.2d 264, the Supreme Court of Michigan addressed whether a stormwater service

charge imposed by the city of Lansing on its residents for the purpose of stormwater control was a fee or a tax.

{¶ 61} In *Bolt*, Lansing decided to separate its combined sanitary and storm sewers. To finance this project, Lansing decided to impose a stormwater service charge. Similar to the instant case, the fee was based on the amount of impervious surface that a parcel contained. The court stated:

> A proper fee must reflect the bestowal of a corresponding benefit on the person paying the charge, which benefit is not generally shared by other members of society. *Nat'l Cable Television Ass'n v. United States & Federal Communications Comm,* 415 U.S. 336, 340-342, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974). Where the charge for either storm or sanitary sewers reflects the actual costs of use, metered with relative precision in accordance with available technology, including some capital investment component, sewerage may properly be viewed as a utility service for which usage-based charges are permissible, and not as a disguised tax.

*Id*. at 164-165.

{¶ 62} But the court held that "the lack of correspondence between the [stormwater service] charges and the benefit conferred demonstrates that the city has failed to differentiate any particularized benefits to property owners from the general benefits conferred on the public." *Id*. at 166. The court continued:

> This conclusion is buttressed by the fact that the acknowledged goal of the ordinance is to address environmental concerns regarding water quality. Improved water quality in the Grand and Red Cedar Rivers and the avoidance of federal penalties for discharge violations are goals that benefit everyone in the city, not only property owners.

*Id.*

{¶ 63} Pursuant to my interpretation of "waste water" above, I do not believe that the Sewer District has authority to manage stormwater; consequently, the assessment fails to support a regulatory purpose, which is a factor that can support a finding that it is indeed a fee and not a tax. *See Drees Co.*, 132 Ohio St.3d 186, 2012-Ohio-2370, 970 N.E.2d 916, at ¶ 16-20. However, even assuming that the Sewer District has statutory authority to manage stormwater as proposed in the SMC, the purported fee fails to meet other indicia of a true fee.

{¶ 64} In the instant case, the Sewer District found that the SWC is necessary (1) to prevent flooding to public and private property, (2) to prevent "[s]treambank erosion[, which] is a significant threat to public and private property, water quality, wildlife, and aquatic and terrestrial habitats," and (3) to prevent "damage[ to] the water resources of Northeast Ohio, [which] impair[s] the ability of these waters to sustain ecological and aquatic systems."

{¶ 65} Despite the district's claims that the SMC will benefit private property, I would hold that alleviating these problems results in a benefit that is conferred on the general public rather than on individual property owners. *See Natl. Cable Television Assn., Inc.*, 415 U.S. at 340-342, 94 S.Ct. 1146, 39 L.Ed.2d 370; *Bolt*, 459 Mich. at 164-165, 587 N.W.2d 264.

{¶ 66} Further, as evidenced by this lawsuit, at minimum there are numerous municipalities (e.g., Beechwood, Bedford Heights, Brecksville,

Independence, Lyndhurst, and Strongsville) and other entities (e.g., Highlands Business Park, L.L.C., Lakepoint Office Park, L.L.C., Park East Office Park, L.L.C., and the Ohio Counsel of Retail Merchants) that oppose the SMC. Voluntary acceptance of a service is another indicator that an assessment is a fee and not a tax. *Natl. Cable Television Assn.* at 340.

{¶ 67} For all the aforementioned reasons, I would hold that the Sewer District's stormwater fee is not a fee, but an unlawful tax.

*Conclusion*

{¶ 68} Because I would hold that R.C. Chapter 6119 does not authorize the type of stormwater regulation that the SMC seeks to impose and that the stormwater fee is actually an unlawful tax, I would affirm the judgment of the court of appeals and hold that the Sewer District does not have the authority to implement the SMC. Accordingly, I respectfully dissent.

O'DONNELL, J., concurs in the foregoing opinion.

_____

Thacker Martinsek, L.P.A., and Mark I. Wallach; Calfee, Halter & Griswold, L.L.P, James F. Lang, Matthew J. Kucharson, and Molly A. Drake; and Marlene Sundheimer, Northeast Ohio Regional Sewer District Director of Law, for appellant.

Berns, Ockner & Greenberger, L.L.C., Sheldon Berns, Paul Greenberger, Benjamin J. Ockner, Jordan Berns, Timothy J. Duff, and Gary F. Werner, for appellees Ohio Council of Retail Merchants, Greater Cleveland Association of Building Owners and Managers, Cleveland Automobile Dealers Association, CADA Properties, L.L.C., Northern Ohio Chapter of NAIOP, Association for Commercial Real Estate, Northeast Ohio Apartment Association, Snowville Service Associates, L.L.C., Boardwalk Partners, L.L.C., Creekview Commons, L.L.C., Fargo Warehouse, L.L.C., Highlands Business Park, L.L.C., JES Development, Ltd., Lakepoint Office Park, L.L.C., Landerbrook Point, L.L.C.,

Newport Square, Ltd., Park East Office Park, L.L.C., Pavilion Properties, L.L.C., and WGG Development, Ltd.

Taft, Stettinius & Hollister, L.L.P., John B. Nalbandian, W. Stuart Dornette, Stephen M. O'Bryan, Gregory J. O'Brien, and Michael J. Zbiegien Jr., for appellees city of Beachwood, city of Bedford Heights, village of Glenwillow, city of Independence, city of Lyndhurst, village of Oakwood, city of Olmsted Falls, and city of Strongsville.

Matty, Henrikson & Greve, L.L.C., David J. Matty, Shana A. Samson, and Justin Whelan, for appellee city of Brecksville.

Barbara A. Langhenry, Director of Law, Harold A. Madorsky, and Kate E. Ryan, urging reversal for amicus curiae city of Cleveland.

McMahon DeGulis, L.L.P., Andrea M. Salimbene, Gregory J. DeGulis, and Erica M. Spitzig, urging reversal for amici curiae National Association of Clean Water Agencies and Association of Ohio Metropolitan Wastewater Agencies.

Jones Day, Yvette McGee Brown, and Chad Readler, urging reversal for amici curiae village of Cuyahoga Heights, village of Moreland Hills, and Orange Village.

Scott Claussen, urging reversal for amicus curiae city of Brooklyn.

Neal M. Jamison, urging reversal for amicus curiae city of Brook Park.

Jerome Dowling, urging reversal for amicus curiae village of Brooklyn Heights.

Thomas P. O'Donnell, urging reversal for amicus curiae village of Highland Hills.

Peter H. Hull, urging reversal for amicus curiae city of Middleburg Heights.

Dale F. Pelsozy, urging reversal for amicus curiae Olmsted Township.

Michael Pokorny, urging reversal for amicus curiae city of Parma Heights.

Joseph W. Diemert Jr. & Associates Co., L.P.A., and Joseph W. Diemert Jr., urging reversal for amicus curiae Mayfield Village.

Waldheger Coyne Co., L.P.A., and Luke McConville, urging reversal for amicus curiae village of Newburgh Heights.

Timothy G. Dobeck, urging reversal for amicus curiae city of Parma.

Richard A. Pignatiello, urging reversal for amicus curiae city of Seven Hills.

William M. Ondrey Gruber, urging reversal for amicus curiae city of Shaker Heights.

David Lambros, urging reversal for amicus curiae village of Valley View.

Michael P. Lograsso, urging reversal for amicus curiae city of South Euclid.

Calfee, Halter & Griswold, L.L.P., and Teresa Metcalf Beasley, urging reversal for amicus curiae city of Warrensville Heights.

Rosalina M. Fini; and Thompson Hine, L.L.P., Michael L. Hardy, Karen E. Rubin, and Devin A. Barry, urging reversal for amicus curiae Cleveland Metropolitan Park District.

Albers & Albers, Eric Luckage, and John Albers, urging reversal for amici curiae Coalition of Ohio Regional Districts, Deerfield Regional Storm Water District, and ABC Water and Storm Water District.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, Jeffrey Jarosch, Deputy Solicitor, and Aaron S. Farmer, Assistant Attorney General, urging reversal for amicus curiae state of Ohio.

Penny L. Sisson, pro se, urging affirmance for amicus curiae Penny L. Sisson.

Eugene P. Holmes, pro se, urging affirmance for amicus curiae Eugene P. Holmes.

Michael J. Jogan, pro se, urging affirmance for amicus curiae Michael J. Jogan.

Maurice A. Thompson, urging affirmance for amici curiae 1851 Center for Constitutional Law and Ohio Real Estate Investors Association.

_____